1  Bryan J. Freedman, Esq. (SBN 151990)
2  Steven B. Stiglitz, Esq. (SBN 222667)
   FREEDMAN & TAITELMAN, LLP
3  1901 Avenue of the Stars, Suite 500
   Los Angeles, CA 90067
4  Telephone: (310) 201-0005
   Facsimile: (310) 201-0045
5  E-mail: BFreedman@ftllp.com
           SStiglitz@ftllp.com
6
   Attorneys for Plaintiff
7  Penske Media Corporation

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  PENSKE MEDIA CORPORATION,          )  Case No.: CV 11-7560-VBF (MRWx)
    dba PMC, a Delaware corporation,    )  Assigned to: Hon. Josephine Staton
12                                      )  Tucker
              Plaintiff,                )  Magistrate: Hon. Michael R. Wilner
13                                      )
         vs.                           )
14                                      )  DISCOVERY MATTER:
    PROMETHEUS GLOBAL MEDIA,           )  PLAINTIFF PENSKE MEDIA
15  LLC, a Delaware limited liability   )  CORPERATION'S NOTICE OF
    company d/b/a hollywoodreporter.com; )  MOTION AND JOINT
    and DOES 1 through 10, inclusive,   )  STIPULATION RE: FURTHER
16                                      )  RESPONSES TO WRITTEN
              Defendants.              )  DISCOVERY PROPOUNDED TO
17                                      )  DEFENDANT PROMETHEUS
                                        )  GLOBAL MEDIA, LLC;
18                                      )
                                        )  DECLARATION OF STEVEN B.
19                                      )  STIGLITZ IN SUPPORT AND
                                        )  [PROPOSED] ORDER (filed
20                                      )  concurrently)
                                        )
21                                      )  DECLARATIONS OF MANISH M.
                                        )  SHAH AND ANTHONY
22                                      )  SBARDELLATI IN OPPOSITION
                                        )  (filed concurrently)
23                                      )
                                        )
24                                      )  Action filed: September 14, 2011
                                        )  Discovery Cut-off: November 9, 2012
25                                      )  Pre-trial Conference Date: June 28, 2013
                                        )  Trial Date:        July 9, 2013
26                                      )  Hearing Date:      January 9, 2013
                                        )  Hearing Time:      9:30 a.m.
27                                      )  Hearing Location: Courtroom H (9th Fl.)
                                        )
28

                                        1

1    TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF

2    RECORD:

3         PLEASE TAKE NOTICE THAT, on January 9, 2013 at 9:30 a.m. or as soon

4    thereafter as this matter may be heard by the above-titled Court, located at 312 North

5    Spring Street Los Angeles, CA 90012, Courtroom H (9th Floor), Los Angeles, CA 90012,

6    pursuant to Federal Rules of Civil Procedure 26, 33, 34, 36 and 37, and Local Rules 37-1,

7    37-2, Plaintiff Penske Media Corporation ("Penske") will and hereby does move, as set

8    forth in the attached Joint Stipulation to this Court, for an order compelling Defendant

9    Prometheus Global Media ("Prometheus") to provide further responses to Penske's First

10   Set of Special Interrogatories and Penske's First Set of Requests for Admission, and to

11   produce documents responsive to Penske's First Set of Requests for Production.

12        Specifically, Penske asks the Court to compel Prometheus to provide a further

13   response to the special interrogatories numbered 1, 6, 10-15, and 16 in Penske's First Set

14   of Special Interrogatories.

15        Further, Penske asks the Court to compel Prometheus to provide a further response

16   to, and to produce documents responsive to, the requests for production of documents

17   numbered 1-10, 27-55, 56-59 in Penske's First Set of Requests for Production.

18        Further, Penske asks the Court to compel Prometheus to provide a further response

19   to the requests for admission numbered 1-7 and 8-41 in Penske's First Set of Requests for

20   Admission.

21        Penske submits this Joint Stipulation on the grounds that Prometheus lacks

22   substantial justification to object to the discovery at issue, which relates to core issues in

23   this case, including:

24        (1) Any work that Prometheus purportedly performed to ensure that the home page

25   of its website did not material infringing on the computer source code that Penske used

26   for its website homepage;

27        (2) Any profits that Prometheus earned in connection with the use of Penske's

28   copyrighted source code;

(3) The scope of work that Prometheus performed or hired others to perform in connection with the project that resulted in Prometheus' copying of the Penske's copyrighted source code;

(4) Other recent instances of unfair competition by Prometheus against Penske, including the unlawful recruitment of Penske's employees and the unlawful copying of Penske's hot news articles.

This Notice of Motion and Motion is based on the attached Joint Stipulation, all points and authorities cited therein, the accompanying declaration of Steven B. Stiglitz and the attached exhibits thereto, any relevant matters of which the Court may take judicial notice, and any argument of counsel that shall be permitted at the hearing of this Motion.

Counsel for the parties met and conferred regarding the discovery in compliance with Local Rule 37-1.  (Stiglitz Decl. ¶ 9, Ex. H (Meet and Confer Letter), ¶ 10, Ex. I (Response to Meet and Confer Letter), ¶ 11 (Telephonic Meet and Confer Session); ¶ 12, Ex. J (Scheduling Order).)

Dated: November 28, 2012                    FREEDMAN & TAITELMAN, LLP


                                      By:    _____/s/_____
                                             Bryan J. Freedman
                                             Steven B. Stiglitz
                                             *Attorneys for Plaintiff*
                                             *Penske Media Corporation*

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1    **I.**    <u>**PLAINTIFF PENSKE MEDIA CORP'S INTRODUCTORY STATEMENT**</u>

2      This case arises from The Hollywood Reporter's blatant word-for-word copying of

3 the source code used to create the website homepage for TVLine.com, another top media

4 source that focuses on the entertainment industry. The parent company of TVLine.com,

5 Plaintiff Penske Media Corporation ("Penske"), caught The Hollywood Reporter red-

6 handed and promptly filed this lawsuit for copyright infringement against the parent

7 company of The Hollywood Reporter, Defendant Prometheus Global Media, LLC

8 ("Prometheus"). Prometheus promptly issued a press release stating that it would remove

9 the offending the source code from The Hollywood Reporter website and conduct an

10 "investigation" into how the copying occurred. Prometheus has since contended that the

11 copying occurred as a result of a supposed miscommunication between Prometheus and

12 the vendor Prometheus hired to create the offending website homepage, Ifran Ali of

13 Nihaki Systems, Inc. ("Nihaki")

14      Penske propounded its First Set of Requests for Production (the "RFPs"), First Set

15 of Special Interrogatories (the "Interrogatories"), and First Set of Requests for Admission

16 (the "RFAs") early in 2012. Despite several attempts to meet-and-confer regarding these

17 discovery requests, Prometheus still has not produced a single document responsive to

18 any of the RFPs and Prometheus still refuses to respond to the vast majority of the

19 Interrogatories and the RFAs. Penske submits this Joint Stipulation on the grounds that

20 Prometheus lacks substantial justification to object to the discovery at issue, which relates

21 to core issues in this case, including:

22      (1) Any inspection that Prometheus' internal software engineers or other employees

23 performed to ensure that its vendor competently and lawfully performed the task assigned

24 to it;

25      (2) Any profits that Prometheus earned in connection with the use of Penske's

26 copyrighted source code;

27      (3) The scope of work that Prometheus performed or hired others to perform in

28 connection with the project to update the homepage for The Hollywood Reporter, which

1   was the project that resulted in Prometheus' copying of the Penske's copyrighted source

2   code; and

3         (4) Other recent instances of unfair competition by Prometheus against Penske,

4   including the unlawful recruitment of Penske's employees and the unlawful copying of

5   Penske's hot news articles.

6         Given that Prometheus admits that it copied-and-pasted dozens of pages of source

7   code from Penske's website, Penske's request for further responses and production in this

8   Joint Stipulation is eminently reasonable. Therefore, the Court should grant the motion.

9   **II.    DEFENDANT PROMETHEUS'S INTRODUCTORY STATEMENT**

10        Penske's attempted motion to compel is both untimely and meritless. Discovery in

11  this case closed on November 9, 2012. While discovery was open, Penske made barely

12  any effort to develop the facts. For example, Penske noticed only one deposition and

13  took none; it sought documents from Prometheus but did not finalize the protective order

14  that was necessary to actually obtain them; and it made sweeping objections to the

15  production of its own documents. At the same time, mediation in the case has been

16  unsuccessful thus far. The result for Penske is no doubt uncomfortable: a case that is

17  neither settled nor, from Penske's perspective, ready for trial. That discomfort explains

18  why Penske is making this motion, but it does not provide any basis for the Court to

19  entertain or grant it.

20        The motion is untimely because the Court-imposed deadline for filing motions to

21  compel discovery was November 19, 2012. *See* Decl. of Anthony Sbardellati ¶ 4 & Ex.

22  B at § 4, submitted herewith in opposition to Penske's motion to compel. Local Rule 37-

23  2.1 required Penske to provide Prometheus with 7 days to complete Prometheus's portion

24  of this joint stipulation, following which Prometheus was also entitled to one business

25  day to review and sign the final joint stipulation. Penske did not provide a proper draft of

26  the joint stipulation until the evening of Wednesday November 14, 2012 - only five days

27  before the deadline rather than the seven required by the rule. *See* Sbardellati Decl. ¶ 3.

28  The motion should be denied on that basis alone.

1    The motion also is meritless.  This is a very simple case and Penske is attempting

2  to broaden it with sweeping discovery that goes far beyond the matters actually at issue.

3  The complaint lists one cause of action, for copyright infringement.  This arises from an

4  incident where a contractor for Prometheus copied a small amount of routine code from a

5  Penske website, and Prometheus used the code on its own website for all of three weeks.

6  Prometheus promptly took down the code after suit was filed.  This plainly caused

7  Penske no harm and earned THR no profits.  Indeed, the only reason this matter even

8  came to court is that Penske chose to exploit it for publicity purposes by filing suit rather

9  than advising Prometheus informally.  Yet Penske is moving for discovery of a wide

10  range of matters that have nothing to do with the code incident, including Prometheus's

11  editorial and hiring practices as well as website development issues that have nothing to

12  do with the alleged copyright infringement.

13    Penske and Prometheus are fierce competitors in the business of entertainment

14  journalism.  Penske should not be allowed to use this lawsuit to attempt to catch up in the

15  market by conducting a general fishing expedition into the affairs of Prometheus and its

16  highly successful THR property.

17    If the Court decides to consider Penske's motion, despite its untimeliness, then

18  Prometheus respectfully submits that the Court should also consider Prometheus's own

19  motion to compel, to be filed separately.  As set forth in that motion, Penske has seriously

20  defaulted on its own discovery obligations.

21

22  III.    **PENSKE'S STATEMENT OF RELEVANT FACTS**

23    A.    The Gravamen of the Complaint

24    In the Complaint, Penske alleges that its entertainment industry publications,

25  including Deadline Hollywood and TVLine, have made substantial investments in hiring

26  talented reporters to beat the competition to the important news stories and in hiring

27  talented internal software engineers to create elegant and user-friendly websites.  As a

28

6

result, Penske alleges that Deadline Hollywood and TVLine had become more popular and better websites than The Hollywood Reporter, which is a traditional entertainment industry powerhouse whose status has lagged due to neglect.

Prometheus has taken unlawful measures in an attempt to help The Hollywood Reporter regain its once-prominent status in the entertainment industry.

First, Prometheus remade The Hollywood Reporter website in TVLine's image.  It is undisputed that The Hollywood Reporter's redeveloped website copied dozens of pages of Penske's source code word-for-word and thereby replicated the featured module on TVLine's elegant and user-friendly home page.

Second, Prometheus has engaged in a pattern of copying the content of news articles from Penske's websites as well.  Penske can show that Prometheus is copying stories rather than coincidentally writing stories on the same subjects because The Hollywood Reporter's stories have contained a number of arbitrary features of articles that Deadline Hollywood published on the same subjects.   For example, as alleged in the Complaint, Deadline Hollywood randomly happened to publish stories about two completely unrelated television scripts in one combined news article.  Then, minutes later, The Hollywood Reporter posted the same two stories in the same manner.

Third, Prometheus attempted to recruit Penske employees who were under long-term contracts.  Although these efforts proved largely unsuccessful, Prometheus' attempt to interfere with Penske's employment contracts reflects Prometheus' intent to use any means necessary to undermine Penske's competitive advantage over Prometheus.

B.   Procedural History

Prometheus served its Initial Disclosures in February 2012.  (Declaration of Steven B. Stiglitz ("Stiglitz Decl.") ¶ 2, Ex. A (Initial Disclosures).)

Penske propounded the discovery at issue in March 2012.  (Declaration of Steven B. Stiglitz ("Stiglitz Decl.") ¶ 3, Ex. B (RFPs), ¶ 4, Ex. C (Interrogatories), ¶ 5, Ex. D (RFAs).)

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Prometheus responded to the discovery at issue in April 2012. (Stiglitz Decl. ¶ 6, Ex. E (Objections and Responses to RFPs), ¶ 7, Ex. F (Objections and Responses to Interrogatories), ¶ 8, Ex. G (Objections and Responses to RFAs).)

Counsel for the parties met and conferred regarding the discovery in compliance with Local Rule 37-1. (Stiglitz Decl. ¶ 9, Ex. H (Meet and Confer Letter), ¶ 10, Ex. I (Response to Meet and Confer Letter), ¶ 11 (Telephonic Meet and Confer Session).) Prometheus refused to provide further responses to any of the discovery at-issue.

Federal Rules of Civil Procedure 33, 34, and 36, permit a party to propound written interrogatories, requests for production and requests for admission, respectively. Further, pursuant to Federal Rule of Civil Procedure 37 and Central District of California Local Rules 37-1 and 37-2, when a party responding to discovery fails to provide a substantive answer that responds to the discovery request and/or fails to produce responsive documents, the propounding party may file a motion to compel further responses and/or further production of documents in response thereto.

Here, Penske is moving to compel: (1) further responses to its first set of special interrogatories; (2) further responses to, and further production of documents responsive to, its first set of requests for production; and (3) further responses to its first set of requests for admission.

## IV.   PROMETHEUS' STATEMENT OF RELEVANT FACTS

The local rules do not permit a statement of relevant facts, and Prometheus will not compound Penske's departure from the rules by doing the same. Relevant facts are noted in the argument sections below.

## V.   ARGUMENT:  ISSUE #1:  Prometheus's "Inspection" of Source Code (Interrogatory 6)

        A.   Penske's Position:  Prometheus' Inspection of Nihaki's Copied Source Code is Easily Within the Scope of Permissible Discovery Because the Inspection Is Central to the Claim that Prometheus Intentional Copied Penske's Source Code

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1

### 1.   The Discovery Requests and Responses at-Issue

To investigate Prometheus' assertion in its initial disclosures that an outside vendor was responsible for copying Penske's source code, Penske propounded written discovery that includes Special Interrogatory No. 6, which states: "Describe any inspection that YOU performed of the computer code that the OFFENDING CONTRACTOR provided to YOU in connection with the revisions to the HOLLYWOOD REPORTER WEBSITE that YOU published in 2011."

Prometheus' Initial Disclosures already had hinted at the facts responsive to this interrogatory. Specifically, Prometheus named five of its employees who held job titles as Web Development Director, Chief Technology Officer, Developer, Project Manager, and Project Manager, all as having knowledge regarding the offending source code.

Despite the fact that Prometheus was willing to disclose some (or possibly all) of the persons with knowledge regarding the copying of Penske's source code, Prometheus engaged in gamesmanship in response to Penske's written discovery. Specifically, Prometheus stated, subject to objection, nothing more than that "the code was reviewed by one or more employees of Prometheus."

Further, Prometheus' objections were contrived and self-contradictory, and therefore, did not justify a refusal to provide a complete response. The following is Prometheus' response, with objections, stated in full:

"To the extent that Defendant performed any review of the code as a result of or in response to this lawsuit, Defendant objects to the Interrogatory as seeking information protected from disclosure by the attorney-client privilege, the work-product doctrine, and any other applicable privileges, immunities or protections from disclosure. Defendant further objects on the grounds that the phrase "describe any inspection" is vague, that the type of information sought is not appropriately obtained through interrogatories, and that any detailed information of the type requested includes Confidential Information that would only properly be produced under an appropriate confidentiality order. Subject to and without waiving the foregoing objections, and subject to and without waiving the

1  foregoing General Objections, Defendant stated that the code was reviewed by one or
2  more employees of Prometheus."

3  Notably, Prometheus' two objections to disclosure of any pre-litigation investigation
4  contradict each other in that Prometheus describes the request as "vague," but then
5  complains that Penske supposedly cannot seek "detailed information of the type
6  requested" without a protective order.  Prometheus' second objection reveals that the first
7  is contrived.  Further, Prometheus' statement in its meet and confer response that its
8  response is "complete and proper" reveals that Prometheus is not standing on the
9  objection that a protective order is necessary.  Given that Prometheus is refusing to
10 disclose even the same scope of information included in its Initial Disclosures, the Court
11 should infer that Prometheus' response constitutes gamesmanship.

2.    <u>Reasons to Compel Further Responses</u>

13     In litigation in federal court, each party general has the right to discover "any
14 nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P.
15 26(b)(1).

16     Here, Penske's claim for copyright infringement includes an element of intent.  In
17 light of Prometheus' contention that Nihaki is solely responsible for the copying, Penske
18 needs discovery of information relevant to show that Prometheus intended to copy
19 Penske's source code.  Further, the scope and extent of any review that Prometheus
20 conducted is likely to show whether or not Prometheus actually knew of Nihaki's
21 copying.  For example, if Prometheus performed virtually no review of the source code or
22 the resulting website interface, a jury might infer that Prometheus was turning a blind eye
23 to the fact that Nihaki's finished product looked just like the website of Prometheus' top
24 competitor.  Thus, the discovery sought is directly relevant to the copyright claim in this
25 case, and the Court should compel a further response to Special Interrogatory No. 6.

26     B.    <u>Prometheus' Position: The Interrogatory Response Was Proper</u>

10

Penske's Interrogatory No. 6:[1]

Describe any inspection that YOU performed of the computer code that the OFFENDING CONTRACTOR provided to YOU in connection with the revisions to the HOLLYWOOD REPORTER WEBSITE that YOU published in 2011.

Prometheus's Response to Interrogatory No. 6:

To the extent that Defendant performed any review of the code as a result of or in response to this lawsuit, Defendant objects to this Interrogatory as seeking information protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privileges, immunities or protections from disclosure. Defendant further objects on the grounds that phrase "describe any inspection" is vague, that the type of information sought is not appropriately obtained through interrogatories, and that any detailed information of the type requested includes Confidential Information that could only properly be produced under an appropriate confidentiality order. Subject to and without waiving the foregoing objections, and subject to and without waiving the foregoing General Objections, Defendant states that the code was reviewed by one or more employees of Prometheus.

Prometheus's Points and Authorities on Issue 1:

Prometheus properly responded to this interrogatory by acknowledging that a review of the code took place and was conducted by its personnel. By pressing for a further response, Penske can only be asking for a detailed description of the communications and thought processes of all Prometheus's relevant personnel as they assessed the particulars of the code. This is not an appropriate use of an interrogatory. *See* Wright & Miller, *Federal Practice & Proc.* § 2174 ("[A] party cannot ordinarily be forced to prepare its opponent's case … [and] interrogatories that require a party to make extensive investigations, research, or compilation or evaluation of data for the opposing party are in many circumstances improper."). Rather, the proper mechanism for obtaining such information would have been to take depositions of Prometheus's

---

[1]   With respect to each Issue in this Joint Stipulation, Penske has improperly woven the text of the disputed discovery requests and responses into its own argument; therefore, Prometheus has, at the beginning of its discussion of each issue, reprinted verbatim each disputed request and response, followed by Prometheus's contentions of fact and law, in compliance with Local Rule 37-2.1.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

employees and to review the relevant written communications. *See, e.g., Halder v. Intern. Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977) (refusing to compel response to burdensome interrogatories because "where the data is available to plaintiff … by means of the appropriate discovery motion, this party should assume the burden of locating and assimilating the information he desires"). Yet Penske did not notice the deposition of a single Prometheus technical employee, despite the fact that Prometheus identified the relevant persons in its initial disclosures. In addition, Prometheus agreed, subject to entry of an appropriate protective order, to produce documents that would have allowed Penske to formulate and substantiate its own litigation position about what kind of inspection Prometheus performed of the code. Penske never responded to Prometheus's final suggestion that the Parties involve the Court in reaching agreement on a protection order. Instead, Penske simply allowed the discovery period to expire. *See* Sbardellati Decl. ¶ 2 & Ex. A.

## VI.   ARGUMENT: ISSUE #2: Budget for Website Redevelopment / Carousel (Interrogatories 10 and 11)

### A.   Penske's Position:  Prometheus Budget for the Project that Centered Around the Source Code that Prometheus Copied Is Similarly Relevant to Penske's Copyright Claim

#### 1.   The Discovery Requests and Responses at-Issue

Along the same lines as Special Interrogatory No. 6, Penske propounded additional written discovery seeking information that may be relevant to show that Prometheus was not a victim of Nihaki, but rather a co-conspirator. Special Interrogatory No. 10 and 11 seek information regarding the budgeting process for The Hollywood Reporter's redeveloped website. These interrogatories several functions. First, the interrogatories seek to determine whether the budget reflected any realistic possibility that Nahaki actually could have performed the required work to create from scratch the same material that Prometheus copied from Penske. Second, the interrogatories seek to determine the

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1  scope of the entire project to redevelop The Hollywood Reporter website, which is

2  necessary to determine the portion of the entire project that is comprised by the source

3  code that Prometheus copied from Penske.[2]

4      Rather than substantively respond to the Interrogatories as Penske wrote them,

5  Prometheus responded that the Interrogatories were vague and unilaterally re-wrote the

6  Interrogatories as though they asked for the budget for the copied source code (which is

7  absurd) instead of the actual interrogatories, which sought information regarding the

8  budget to develop the new version of The Hollywood Reporter's website.

9      The following is the text of the interrogatories and the responses thereto:

10     Special Interrogatory No. 10 states:  "IDENTIFY all COMMUNICATIONS in

11 which YOU participated that RELATE TO the expected and/or budgeted cost that

12 PROMETHEUS would incur to develop and/or launch a new version of the

13 HOLLYWOOD REPORTER WEBSITE."

14     The Response to Special Interrogatory No. 10 states:  "Defendant objects to this

15 Interrogatory on the basis that the phrase 'new version of the Hollywood Reporter

16 website' is vague.  Defendant is unable to determine with reasonable particularity what it

17 is being called upon to disclose.  Subject to and without waiving the foregoing objections,

18 and subject to and without waiving the foregoing General Objections, and construing this

19 Interrogatory as calling for identification of communications relating to the expected

20 and/or budgeted cost that Prometheus would incur to develop and/or launch the THR

21 Module, Defendant states that it is not aware of any communications."

22

23

24

_____

25 [2] Prometheus has argued that Penske will be unable to attribute specific profits earned by
Prometheus to the copying of Penske's source code.  One method by which Penske can
26 make that showing is to demonstrate the number of additional "hits" (and thus the amount
of additional revenue) Prometheus received as a result of the entire website
27 redevelopment, and then use surveys or other data to show the relative value of the
28 copied source code to the entire project.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Special Interrogatory No. 11 states: "State any amounts that YOU budgeted to spend to develop a new version of the HOLLYWOOD REPORTER WEBSITE in 2010 or 2011."

The Response to Special Interrogatory No. 11 states: "Defendant objects that the request for 'all communications' that 'relate to' the specified subject is vague, overbroad, and unduly burdensome, that the information sought is not properly obtained through interrogatories, and that any detailed information of the type requested includes Confidential Information that would only properly be produced under an appropriate confidentiality order. " [Prometheus then copied the entire text of its response to Special Interrogatory No. 10, which is set forth above.]

After receiving these responses, the parties met and conferred in an attempt to reach a resolution. Penske explained that it did not ask for the budget for the copied source code, which would have been an absurd interrogatory because Prometheus would not budget money for creating something that it planned to copy something wholesale from its competitor. As reflected in Prometheus' response to Penske's meet-and-confer letter, Prometheus is refusing to provide the information that Penske actually requested on the grounds that "Penske's requests for discovery regarding unrelated projects, that took place in different time periods, involved different persons, and were much larger in scope are clearly not supportable." (Stiglitz Decl. ¶ 10, Ex. I (Response to Meet and Confer Letter).)

## 2.   Reasons to Compel a Further Response

Prometheus' budget for redeveloping its website is relevant for two reasons. First, as above, Prometheus' budget is relevant to show its intent to copy Penske's work. To the extent Prometheus did not anticipate spending a substantial portion of its website redevelopment budget on the key feature of the website's homepage, the jury may infer that Prometheus was intending to simply copy that design from Penske (just as Nihaki ultimately did on Prometheus' behalf). Second, Prometheus' budget is relevant to establish the amount of damages.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Congress explicitly provides for two distinct monetary remedies for copyright infringement – actual damages and recovery of wrongful profits. See 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."); see also Polar Bear Prods. v. Timex Corp., 2004 U.S. App. LEXIS 22131 (9th Cir. 2004).

Further, courts are liberal in granting discovery regarding copyright infringement damages consisting of the defendant's wrongful profits. See, e.g., Cockburn v. SWS Indus., 2012 U.S. Dist. LEXIS 48632, 10-11 (W.D. Wash. 2012) (granting motion to compel financial information to prove actual damages arising from alleged infringement); Sys. Am. v. Rockwell Software, Inc., 2007 U.S. Dist. LEXIS 43677 (N.D. Cal. 2007) (granting motion to compel as to requests for production of financial information on grounds material is *discoverable* even if not "recoverable at trial on a full record."); Excelligence Learning Corp. v. Oriental Trading Co., 2004 U.S. Dist. LEXIS 28125, 25-26 (N.D. Cal. 2004) (granting motion to compel as to information related to defendant's profits on infringing products).

Here, Prometheus' budget is relevant to show either type of allowable damage. If Prometheus did budget a reasonable sum for the creation of its website homepage and then Prometheus actually saved that money by having Nihaki copy the key feature of one of Penske's website homepages, then the budget provides a reasonable basis for calculating actual damages in the form of a reasonable royalty. Alternatively, the same data is relevant to show the amount of Prometheus' profits that are subject to disgorgement. Specifically, the jury could award disgorgement damages by calculating the portion of the Prometheus' increased advertising revenue attributable to website's

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1   homepage.  The jury could apportion the advertising revenue by assuming that the

2   amount of the budget of each improvement for the website is proportional to the overall

3   increase in advertising revenue from the redevelopment effort.

4        For the foregoing reason, the Court should order Prometheus to respond to Special

5   Interrogatory No. 10-11 regarding the budgeting process for the redevelopment of The

6   Hollywood Reporter website.

7        B.    Prometheus's Position:  Prometheus Appropriately Answered the

8              Interrogatory.

9   Interrogatory No. 10:

10

11       IDENTIFY all COMMUNICATIONS in which YOU participated that RELATE
         TO the expected and/or budgeted cost that PROMETHEUS would incur to develop

12       and/or launch a new version of the HOLLYWOOD REPORTER WEBSITE.

13

    Response to Interrogatory No. 10:

14

15       Defendant objects to this Interrogatory on the grounds that the request for "all
         communications" that "relate to" the specified subject is vague, overbroad and

16       unduly burdensome, that the type of information sought is not appropriately
         obtained through interrogatories, and that any detailed information of the type

17       requested includes Confidential Information that could only properly be produced
         under an appropriate confidentiality order.  Defendant objects to this Interrogatory

18       on the basis that the phrase "new version of the Hollywood Reporter website" is
         vague.  Defendant is unable to determine with reasonable particularity what it is

19       being called upon to disclose.  Subject to and without waiving the foregoing
         objections, and subject to and without waiving the foregoing General Objections,

20       and construing this Interrogatory as calling for identification of communications
         relating to the expected and/or budgeted cost that Prometheus would incur to

21       develop and/or launch the THR Module, Defendant states that it is not aware of
         any such communications.

22

23

24

25  Interrogatory No. 11:

26

    State any amounts that YOU budgeted to spend to develop a new version of the

27  HOLLYWOOD REPORTER WEBSITE in 2010 or 2011.

28

Response to Interrogatory No. 11:

> Defendant objects on the basis that the phrase "new version of the Hollywood Reporter website" is vague. Defendant is unable to determine with reasonable particularity what it is being called upon to disclose. Defendant also objects on the grounds that the Interrogatory is overbroad and unduly burdensome, and that any detailed information of the type requested includes Confidential Information that could only properly be produced under an appropriate confidentiality order. Subject to and without waiving the foregoing objections, and subject to and without waiving the foregoing General Objections, and construing this Interrogatory as calling for amounts Defendant budgeted to spend to develop the THR Module, Defendant states that it did not budget a particular amount for that task.

Prometheus's Points and Authorities on Issue 2:

Penske has no basis for requesting discovery of information about the budget for THR's general website redevelopment project, which was carried out from June 2010 to October 2010 – nearly a year before the carousel project. The two projects have no relationship to one another. As set forth in the accompanying Declaration of Manish M. Shah, the project actually at issue in this case – the addition of a "carousel" feature for THR's homepage – was a routine assignment too small to even have a budget, and was begun long after the completion of the general revamping of the website. *See* Shah Decl. ¶¶ 2-3. Prometheus has answered Penske's Interrogatories 10 and 11 with respect to the carousel project. There is no conceivable reason to allow Penske to discover information about the budget of an entirely separate project.

The cases that Penske cites have no bearing on the dispute over Interrogatories 10 and 11. Those cases address when the court will allow discovery of evidence to support a claim of indirect profits gained from copyright infringement. Penske's request for budget information relating to Prometheus's separate website redesign project in no way relates to whether Prometheus earned any profits from the carousel code eight months later. Likewise, Penske makes an argument about increased advertising revenue, but this argument is simply inapplicable to Interrogatories 10 and 11, which do not ask about

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

advertising revenue, but rather ask about Prometheus's budget.

## VI.   ARGUMENT: ISSUE #3 – Amount Actually Spent on Website Redevelopment Project (Interrogatory 12)

### A.   Penske's Position: Information Regarding the Actual Cost for the Website Redevelopment Project Is Relevant for the Same Reasons

#### 1.   The Discovery Request and Response at-Issue

Along the same lines as Special Interrogatory No. 10-11, Penske propounded additional discovery that sought the actual (as opposed to budgeted) costs of the project, to determine whether variances between the actual and budgeted costs would have raised red flags. Specifically, Special Interrogatory No. 12 states: "State any amounts that YOU actually spent to develop the version of the HOLLYWOOD REPORTER WEBSITE, including without limitation the homepage for that website, that YOU published in 2011 and that included the THR MODULE."

Prometheus responded as follows:

"Defendant objects to this Interrogatory on the basis that the phrase 'new version of the Hollywood Reporter website . . . . that you published in 2011' is vague. Defendant is unable to determine with reasonable particularity what it is being called upon to disclose. Defendant also objects on the grounds that the Interrogatory is overbroad and unduly burdensome, and that the information sought is not properly obtained through interrogatories, and that any detailed information of the type requested includes Confidential Information that would only properly be produced under an appropriate confidentiality order. Subject to and without waiving the foregoing objections, and subject to and without waiving the foregoing General Objections, and construing this Interrogatory as calling for the amount Defendant spent to develop the THR Module, and Defendant states that it did not segregate and 'actually spen[d]' any funds on that particular project."

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1    As with Special Interrogatory No. 10-11, this response purposefully evades the

2    actual interrogatory that Penske propounded.

3                    2.      Reasons to Compel a Further Response

4         The Court should compel Prometheus to provide information responsive to Special

5    Interrogatory No. 12 regarding the actual costs for redeveloping The Hollywood

6    Reporter's website for the same reasons as stated in the section above regarding the

7    budgeted costs.

8         B.      Prometheus's Position: Prometheus Fully Answered the Interrogatory as far

9                  as it Could Conceivably Relate to the Carousel and Penske's Copyright

10                 Claim.

11   Interrogatory No. 12:

12

13        State any amounts that YOU actually spent to develop the version of the
          HOLLYWOOD REPORTER WEBSITE, including without limitation the
14        homepage for that website, that YOU published in 2011 and that included the THR
          MODULE.
15

16   Response to Interrogatory No. 12:

17

18        Defendant objects on the basis that the phrase "the version of the Hollywood
          Reporter website … that you published in 2011" is vague.  Defendant is unable to
19        determine with reasonable particularity what it is being called upon to disclose.
          Defendant also objects on the grounds that the Interrogatory is overbroad and
20        unduly burdensome, and that any detailed information of the type requested
          includes Confidential Information that could only properly be produced under an
21        appropriate confidentiality order.  Subject to and without waiving the foregoing
          objections, and subject to and without waiving the foregoing General Objections,
22        and construing this Interrogatory as calling for the amount Defendant spent to
          develop the THR Module, and Defendant states that it did not segregate and
23        "actually spen[d]" any funds on that particular project.
24

25   Prometheus's Points and Authorities on Issue 3:

26        This Issue presents the same question as the last, and Penske's motion should be

27   denied with respect to this Issue for the same reason:  the amounts Prometheus spent on

28

1   its website redesign in 2010 have nothing to do with the carousel project, which was

2   carried out in August 2011 (*see* Shah Decl. ¶¶ 2-3), and which is the entire basis of

3   Penske's copyright claim.  Again, Penske tries to justify its position by incorrectly

4   claiming that the earlier project "centered around" the copying of source code by Mr. Ali

5   – this is simply not the case, as the projects were not related.  *Id.*

6

7   **VII.   ARGUMENT:  ISSUE #4 – Communications with Nihaki (Interrogatories 13**

8   **and 15)**

9        A.    Penske's Position:  Prometheus Communications with Nihaki Are Plainly

10             Relevant

11              1.    The Discovery Requests and Responses at-Issue

12        Along the same lines, Penske also propounded Special Interrogatory No. 13 and

13   15.  These interrogatories seek communications with Nihaki to determine whether

14   Prometheus and Nihaki had an understanding that Nihaki generally should, or should in

15   this instance, copy material from one of Prometheus' competitors.

16

17        Special Interrogatory No. 15 is the narrower of the two requests.  It states:

18   IDENTIFY all COMMUNICATIONS between YOU and the OFFENDING

19   CONTRACTOR that RELATE TO the creation, modification, revision, development,

20   design, implementation, or programming of the new version of the HOLLYWOOD

21   REPORTER WEBSITE that YOU published in 2011 and that contained the THR

22   MODULE.

23        Prometheus responded as follows:

24        "Subject to and without waiving the foregoing General Objections, Defendant

25   objects to this Interrogatory on the grounds that the request for 'all communications' that

26   'relate to' the specified subject is vague, overbroad and unduly burdensome, and that the

27   type of information sought is not appropriately obtained through interrogatories.

28   Defendant objects to this Interrogatory on the grounds that the phrase 'new version of the

20

Hollywood Reporter website' is vague, and that, if it were to be produced in spite of these objections, such information includes Confidential Information that would only properly be produced under an appropriate confidentiality order.  To the extent this Interrogatory calls for communications in the form of documents, Defendant objects on the ground that this Interrogatory is duplicative of Plaintiff's document request number 23."

Special Interrogatory No. 13 seeks similar communication for a longer time frame. Specifically, it states:  "IDENTIFY all COMMUNICATIONS between YOU and the OFFENDING CONTRACTOR in the last five (5) years that RELATE TO the potential or actual provision of services to create, modify, revise, develop, design, implement, or program any webpage or website."

Prometheus responded as follows:

"Subject to and without waiving the foregoing General Objections, to the extent that this Interrogatory related to communications that were the result of or in response to this lawsuit, Defendant objects to this Interrogatory as seeking information protected from disclosure by the attorney-client privilege, the work-product doctrine, and any other applicable privileges, immunities or protections from disclosure.  Defendant also objects to this Interrogatory on the grounds that the request for 'all communications' that 'relate to' the specified subject is vague, overbroad and unduly burdensome, that the type of information sought is not appropriately obtained through interrogatories.  Defendant objects to this Interrogatory on the grounds that the vast majority of Communications implicated are irrelevant to any claim or defense in this lawsuit, and that, if it were to be produced in spite of these objections, such information includes Confidential Information that would only properly be produced under an appropriate confidentiality order.  To the extent this Interrogatory calls for communications in the form of documents, Defendant objects on the ground that this Interrogatory is duplicative of Plaintiff's document request number 23."

During the meet and confer session, Prometheus took the position that it had minimal communications with Nihaki and therefore that the issue was largely moot.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1   Penske reiterated that it is entitled to receive information regarding whatever
2   communications actually did occur because Nihaki's work is directly at issue in the
3   complaint.

### 2.   Reasons for Compelling a Further Response

5       The Court should compel Prometheus to identify all of its communications with
6   Nihaki because those are the communications central to Penske's claim for copyright
7   infringement.  Special Interrogatory No. 15 is particularly tailored to the dispute here
8   because it seeks only communications regarding the specific project during which Nihaki
9   stole Penske's source code.  Thus, that interrogatory seeks the communications most
10  likely to reveal Prometheus' complicity in Nihaki's conduct.  Prometheus' excuse that it
11  did not engage in many such communications is no excuse for refusing to identify the
12  communications that did occur.  Special Interrogatory No. 13 seeks communications
13  between Prometheus and Nihaki for a longer period of time to determine whether they
14  had an established relationship in which Nihaki performed web development services,
15  and if so, whether they had an understanding regarding Prometheus' tolerance for copying
16  the design or source code of its competitors.  The broader scope of emails that Penske
17  seeks in this interrogatory are relevant to show Prometheus' modus operandi for hiring
18  this particular web designer to copy the intellectual property of competitors.  Thus, the
19  Court should compel a further response.

20      B.    <u>Prometheus's Position</u>:  The Interrogatories Are Vastly Overbroad and Call
21          for Information Having Nothing to do with the Carousel or Penske's
22          Copyright Cause of Action

23  <u>Interrogatory No. 13</u>:

24      IDENTIFY all COMMUNICATIONS between YOU and the OFFENDING
25      CONTRACTOR in the last five (5) years that RELATE TO the potential or actual
26      provision of services to create, modify, revise, develop, design, implement, or
            program any webpage or website.
27

28  <u>Response to Interrogatory No. 13</u>:

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Subject to and without waiving the foregoing General Objections, to the extent that this Interrogatory relates to communications that were the result of or in response to this lawsuit, Defendant objects to this Interrogatory as seeking information protected from disclosure by the attorney-client privilege, the work product doctrine, and any other applicable privileges, immunities or protections from disclosure. Defendant also objects to this Interrogatory on the grounds that the request for "all communications" that "relate to" the specified subject is vague, overbroad and unduly burdensome, and that the type of information sought is not appropriately obtained through interrogatories. Defendant objects to this Interrogatory on the grounds that the vast majority of the Communications implicated are irrelevant to any claim or defense in this lawsuit, and that, if it were to be produced at all in spite of the foregoing objections, such information includes Confidential Information that could only properly be produced under an appropriate confidentiality order. To the extent that this Interrogatory calls for communications in the form of documents, Defendant objects on the ground that this Interrogatory is duplicative of Plaintiff's document requests number 22-26.

Interrogatory No. 15:

IDENTIFY all COMMUNICATIONS between YOU and the OFFENDING CONTRACTOR that RELATE TO the creation, modification, revision, development, design, implementation, or programming of the new version of the HOLLYWOOD REPORTER WEBSITE that YOU published in 2011 and that contained the THR MODULE.

Response to Interrogatory No. 15:

Subject to and without waiving the foregoing General Objections, Defendant objects to this Interrogatory on the grounds that the request for "all communications" that "relate to" the specified subject is vague, overbroad and unduly burdensome, and that the type of information sought is not appropriately obtained through interrogatories. Defendant also objects on the grounds that the phrase "new version of the Hollywood Reporter website" is vague, and that, if it were to be produced at all in spite of the foregoing objections, the requested information includes Confidential Information that could only properly be produced under an appropriate confidentiality order. To the extent that this Interrogatory calls for communications in the form of documents, Defendant objects on the ground that this Interrogatory is duplicative of Plaintiff's document requests number 22-26.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Prometheus's Points and Authorities on Issue 4:

Penske's request to identify "all communications" with Mr. Ali that relate to any website related services Mr. Ali performed would entail recounting virtually every written and oral remark that Mr. Ali made in the year that he performed work for Prometheus. *See* Shah Decl. ¶ 2. The proper discovery mechanisms for identifying any relevant communications in this regard would have been depositions and discovery of documents. *See, e.g., Halder*, 75 F.R.D. at 658. Prometheus identified Mr. Ali in its initial disclosures. If Penske wished to learn about "all communications" between him and Prometheus that related to any work he did on the THR website, or "all communications" in which he ever engaged in connection with the carousel project, Penske should have deposed him. If Penske wished to review written communications, Penske should have responded to Prometheus's suggestion about reaching an agreement on a protective order. *See* Sbardellati Decl. ¶ 2 & Ex. A. Now, discovery is closed. Requiring Prometheus to assemble and identify "all communications" involving Mr. Ali is an inappropriate use of an interrogatory. Prometheus cannot realistically be expected to recreate, in an interrogatory, blow-by-blow discussions in which Mr. Ali engaged, the vast majority of which had nothing to do with this case. *See* Wright & Miller, *Federal Practice & Proc.* § 2174 ("[A] party cannot ordinarily be forced to prepare its opponent's case ... [and] interrogatories that require a party to make extensive investigations, research, or compilation or evaluation of data for the opposing party are in many circumstances improper."); *Halder*, 75 F.R.D. at 658 ("[W]here the data is available to plaintiff ... by means of the appropriate discovery motion, this party should assume the burden of locating and assimilating the information he desires.").

In addition, the Interrogatories are obviously overbroad. Mr. Ali worked full time at Prometheus's office for approximately one year, from October 2010 until shortly after this lawsuit was filed on September 14, 2011. *See* Shah Decl. ¶ 2. During that time, his day-to-day work was performing website projects for the various websites that Prometheus owns (which include billboard.com, adweek.com, hollywoodreporter.com

and others). *Id.* Penske's Interrogatories encompass all of those communications. Even if this were a document request, as opposed to an Interrogatory, to "identify" those hundreds of thousands of communications would be unduly burdensome and would call for a significant amount of irrelevant information. *See Womack v. Metro. Transit Sys.,* 2010 WL 2178962, at *2 (S.D. Cal. 2010) (denying request for plaintiff's daily work logs, as "the day-to-day detail of what Plaintiff did while at work for two years is an overly-broad category of information that is not relevant to the core issues in this lawsuit").

One third-party computer programmer mistakenly copied code on a single project – this does not justify a fishing expedition – via an interrogatory, no less – into every website-related communication Prometheus ever had with him or his employer.[3]

## VIII.  ARGUMENT:  ISSUE #5 – Other Contractors Who Have Performed Web Services for Prometheus (Interrogatory 14)

    A.   Penske's Position:  The Court Should Compel Prometheus to Provide Information Regarding Other Contractors Who It Has Hired to Perform Similar Services Because the Decision to Hire a Less Reputable Web Designer Is Relevant to Signal Prometheus' Intent to Engage in Misconduct

        1.   The Discovery Requests and Responses at-Issue

Penske also propounded Special Interrogatory No. 14, seeking information regarding other computer programmers who Prometheus has hired for web development projects. This was targeted to determine, among other things, whether Prometheus

---

[3] Penske claims that Prometheus took the position during the meet-and-confer that Prometheus had minimal communications with Nihaki, and that Prometheus "did not engage in many such communications" with Nihaki. This is false; Prometheus never took that position. Prometheus communicated with Mr. Ali of Nihaki virtually every day for a year. *See* Shah Decl. ¶ 2.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1  regularly uses more reputable vendors and specifically chose Nihaki because it merely
2  wanted Nihaki to copy Penske's work product.

3      Special Interrogatory No. 14 states: "IDENTIFY any and all PERSONS that have
4  provided services to YOU to create, modify, revise, develop, design, implement, or
5  program any webpage or website in the last five (5) years."

6      Prometheus responded as follows:

7      "Subject to and without waiving the foregoing General Objections, Defendant
8  objects to this Interrogatory on the grounds that the vast majority of Communications
9  implicated are irrelevant to any claim or defense in this lawsuit.  Defendant also objects
10 on the basis that the Interrogatory is overbroad and unduly burdensome, and that, if it
11 were to be produced in spite of these objections, such information includes Confidential
12 Information that would only properly be produced under an appropriate confidentiality
13 order.  To the extent this Interrogatory calls for communications in the form of
14 documents, Defendant objects on the ground that this Interrogatory is duplicative of
15 Plaintiff's document request number 23."

16     Prometheus' position did not change after meeting and conferring.

17          2.    Reasons to Compel a Further Response

18     For the same reasons set forth above, the Court should compel a response to
19 Special Interrogatory No. 14, which seeks information that will help Penske educate the
20 jury regarding Prometheus' options for hiring a web designer and will help Penske show
21 the jury that Prometheus' specific choice of vendor for this project reflected an intent to
22 seek less creative work.

23
24
25
26
27
28

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1      B.    <u>Prometheus's Position</u>: The Interrogatory Is Overbroad and Seeks

2            Information that Is Irrelevant to this Lawsuit

3

<u>Interrogatory No. 14</u>:

4

5      IDENTIFY any and all PERSONS that have provided services to YOU to create, modify, revise, develop, design, implement, or program any webpage or website in the last five (5) years.

6

7

8

<u>Response to Interrogatory No. 14</u>:

9

      Subject to and without waiving the foregoing General Objections, Defendant

10 objects to this Interrogatory on the ground that the vast majority of the information requested is irrelevant to any claim or defense in this lawsuit. Defendant also

11 objects on the basis that the Interrogatory is overbroad and responding would be unduly burdensome, and that, if it were to be produced at all in spite of the

12 foregoing objections, such information includes Confidential Information that could only properly be produced under an appropriate confidentiality order. To the

13 extent that this Interrogatory calls for communications in the form of documents,

14 Defendant objects on the ground that this Interrogatory is duplicative of Plaintiff's document request number 23.

15

16 <u>Prometheus's Points and Authorities on Issue 5</u>:

17      Penske's Interrogatory 14 is overbroad. Prometheus employs a large department

18 of personnel who provide services related to websites. *See* Shah Decl. ¶ 4. As mentioned

19 above, Prometheus owns numerous websites in addition to THR's. *Id.* ¶ 1. Numerous

20 employees who had nothing to do with the carousel project would fall within Penske's

21 request. In addition, Prometheus has hired over the years, and continues to hire, a range

22 of vendors to work on computer projects. *See* Shah Decl. ¶ 4. To assemble a list of all of

23 these people and entities would be unduly burdensome; it would also be pointless, as the

24 only event of relevance is the creation of the carousel code. *See Halder,* 75 F.R.D. at 658

25 (answers to interrogatories requesting data on every computer programmer hired by large

26 conglomerate in previous seven years would not be compelled in view of interrogatories'

27 burdensomeness). Prometheus identified the individuals likely to have relevant

28

1  knowledge in its initial disclosures, and Penske never attempted to depose them.

2  Penske only half-heartedly attempts to justify this request, claiming that it "seeks

3  information that will help Penske educate the jury regarding Prometheus's options for

4  hiring a web designer and will help Penske show the jury that Prometheus's specific

5  choice of vendor for this project reflected an intent to seek less creative work." This is

6  sheer speculation, counterfactual, and far too attenuated to support the discovery sought.

7  **IX.    ARGUMENT:  ISSUE #6 – Gross Revenues and Expenses from Website and**

8  **from homepage, for three weeks that carousel was up (requests for Production 56-**

9  **59)**

10  A.    Penske's Position:  The Court Should Compel Prometheus to State the

11  Revenue and Costs Associated with the Redeveloped Website Because that

12  Is the Only Data Available to Show the Amount of Profits Subject to

13  Disgorgement

14  1.    The Discovery Requests and Responses at-Issue

15  Penske is seeking discovery regarding Prometheus' wrongfully obtained profits

16  resulting from Prometheus' copyright infringement.  Given the undisputed fact that

17  Prometheus redeveloped its website in large part by using a word-for-word copy of

18  Penske's key source code, Penske has requested information regarding Prometheus'

19  wrongfully obtained profits resulting from Prometheus' copyright infringement.

20  Penske's Requests for Production No. 56-59 all directly relate to this issue.

21  Requests for Production No. 56 states, "Produce all DOCUMENTS that RELATE

22  TO any and all amounts of gross revenue YOU obtained from the HOLLYWOOD

23  REPORTER WEBSITE during the entire time that the HOLLYWOOD REPORTER

24  WEBSITE included the THR MODULE."

25  Requests for Production No. 57 states, "Produce all DOCUMENTS that RELATE

26  TO any and all amounts of expenses YOU incurred in connection YOUR operation of the

27

28

1  HOLLYWOOD REPORTER WEBSITE during the entire time that the HOLLYWOOD
2  REPORTER WEBSITE included the THR MODULE."

3      Requests for Production No. 58 states, "Produce all DOCUMENTS that RELATE
4  TO any and all amounts of gross revenue YOU obtained from the homepage of the
5  HOLLYWOOD REPORTER WEBSITE (i.e. the webpage with the uniform resource
6  locator (URL) http://www.hollywoodreporter.com) during the entire time that the
7  HOLLYWOOD REPORTER WEBSITE included the THR MODULE."

8      Requests for Production No. 59 states, "Produce all DOCUMENTS that RELATE
9  TO any and all amounts of expenses YOU incurred in connection with YOUR operation
10 of the homepage of the HOLLYWOOD REPORTER WEBSITE (i.e. the webpage with
11 the uniform resource locator (URL) http://www.hollywoodreporter.com) during the entire
12 time that the HOLLYWOOD REPORTER WEBSITE included the THR MODULE."

13     In response to each of the foregoing requests, Prometheus refused to respond based
14 upon the same objections.  Specifically, Prometheus responded:

15     "Subject to and without waiving the foregoing General Objections, Defendant
16 objects that this Document Request is vague, overbroad and calls for documents that have
17 no relevance to the case and would be unduly burdensome to collect and produce.
18 Defendant also objects to this Document Request because the information requested is
19 not relevant unless and until Plaintiff has proved that Defendant is liable and that Plaintiff
20 has suffered damages, and even if Plaintiff offered such proof, the documents requested
21 are not relevant to any rational calculation of damages.  Defendant also objects to this
22 Request because it calls for documents that, if they were to be produced in spite of the
23 foregoing objections, are of the type that would include Confidential Information that
24 would only properly be produced under an appropriate confidentiality order."

25     Notably, Prometheus has not provided any information regarding the
26 supposed burden associated with producing its revenue or cost data for the brief period
27 during which Prometheus admittedly used Penske's copyrighted source code for the key
28 portion of its redeveloped website.  Instead, Prometheus stated during the meet and

confer process that the revenue and cost data it already has compiled are for longer periods of time.

### 2.   Reasons to Compel a Further Response

During the meet and confer process, Prometheus contended that revenue and cost data for the website redevelopment project is not discoverable simply because that project was larger than the scope of Penske's copyrighted source code that Prometheus copied. Prometheus' position is based on the inapposite case law, such as the <u>Polar Bear Products</u> case, which relates to whether certain evidence was sufficient (generally by itself) to warrant a plaintiff's verdict after trial. Here, however, the issue for the Court to decide is not whether the discovery sought is sufficient to support a verdict, but rather, whether the information sought is <u>discoverable</u>. Numerous courts already have reached that issue and concluded that broad revenue and expense data is discoverable, especially when, as here, there is no more refined data available. <u>See, e.g.</u>, <u>Cockburn v. SWS Indus.</u>, 2012 U.S. Dist. LEXIS 48632, 10-11 (W.D. Wash. 2012) (granting motion to compel financial information to prove actual damages arising from alleged infringement); <u>Sys. Am. v. Rockwell Software, Inc.</u>, 2007 U.S. Dist. LEXIS 43677 (N.D. Cal. 2007) (granting motion to compel as to requests for production of financial information on grounds material is *discoverable* even if not "recoverable at trial on a full record."); <u>Excelligence Learning Corp. v. Oriental Trading Co.</u>, 2004 U.S. Dist. LEXIS 28125, 25-26 (N.D. Cal. 2004) (granting motion to compel as to information related to defendant's profits on infringing products).

For the foregoing reasons, the Court should compel Prometheus to produce all non-privileged documents responsive to Penske's Requests for Production No. 56-59.

### B.   Prometheus' Position:

Document Request No. 56:

> Produce all DOCUMENTS that RELATE TO any and all amounts of gross revenue YOU obtained from the HOLLYWOOD REPORTER WEBSITE during the entire time that the HOLLYWOOD REPORTER WEBSITE included the THR

MODULE.

Response to Document Request No. 56:

Subject to and without waiving the foregoing General Objections, Defendant objects that this Document Request is vague, overbroad and calls for documents that have no relevance to the case and would be unduly burdensome to collect and produce. Defendant also objects to this Document Request because the information requested is not relevant unless and until Plaintiff has proved that Defendant is liable and that Plaintiff has suffered damages, and even if Plaintiff offered such proof, the documents requested are not relevant to any rational calculation of damages. Defendant also objects to this Request because it calls for documents that, if they were to be produced in spite of the foregoing objections, are of a type that would include Confidential Information that could only properly be produced under an appropriate confidentiality order.

Document Request No. 57:

Produce all DOCUMENTS that RELATE TO any and all amounts of expenses YOU incurred in connection [*sic*] YOUR operation of the HOLLYWOOD REPORTER WEBSITE during the entire time that the HOLLYWOOD REPORTER WEBSITE included the THR MODULE.

Response to Document Request No. 57:

Subject to and without waiving the foregoing General Objections, Defendant objects that this Document Request is vague, overbroad and calls for documents that have no relevance to the case and would be unduly burdensome to collect and produce. Defendant also objects to this Document Request because the information requested is not relevant unless and until Plaintiff has proved that Defendant is liable and that Plaintiff has suffered damages, and even if Plaintiff offered such proof, the documents requested are not relevant to any rational calculation of damages. Defendant also objects to this Request because it calls for documents that, if they were to be produced in spite of the foregoing objections, are of a type that would include Confidential Information that could only properly be produced under an appropriate confidentiality order.

Document Request No. 58:

Produce all DOCUMENTS that RELATE TO any and all amounts of gross revenue YOU obtained from the homepage of the HOLLYWOOD REPORTER

31

WEBSITE (i.e. the webpage with the uniform resource locator (URL) http://www.hollywoodreporter.com) during the entire time that the HOLLYWOOD REPORTER WEBSITE included the THR MODULE.

Response to Document Request No. 58:

Subject to and without waiving the foregoing General Objections, Defendant objects that this Document Request is vague, overbroad and calls for documents that have no relevance to the case and would be unduly burdensome to collect and produce. Defendant also objects to this Document Request because the information requested is not relevant unless and until Plaintiff has proved that Defendant is liable and that Plaintiff has suffered damages, and even if Plaintiff offered such proof, the documents requested are not relevant to any rational calculation of damages. Defendant also objects to this Request because it calls for documents that, if they were to be produced in spite of the foregoing objections, are of a type that would include Confidential Information that could only properly be produced under an appropriate confidentiality order.

Document Request No. 59:

Produce all DOCUMENTS that RELATE TO any and all amounts of expenses YOU incurred in connection with YOUR operation of the homepage of the HOLLYWOOD REPORTER WEBSITE (i.e. the webpage with the uniform resource locator (URL) http://www.hollywoodreporter.com) during the entire time that the HOLLYWOOD REPORTER WEBSITE included the THR MODULE.

Response to Document Request No. 59:

Subject to and without waiving the foregoing General Objections, Defendant objects that this Document Request is vague, overbroad and calls for documents that have no relevance to the case and would be unduly burdensome to collect and produce. Defendant also objects to this Document Request because the information requested is not relevant unless and until Plaintiff has proved that Defendant is liable and that Plaintiff has suffered damages, and even if Plaintiff offered such proof, the documents requested are not relevant to any rational calculation of damages. Defendant also objects to this Request because it calls for documents that, if they were to be produced in spite of the foregoing objections, are of a type that would include Confidential Information that could only properly be produced under an appropriate confidentiality order.

Prometheus's Points and Authorities on Issue 6:

In these four requests, Penske seeks documents relating to all of THR's revenues and expenses for hollywoodreporter.com for the three-week period during which the carousel code at issue was used, *i.e.*, August 25 through September 14. To be clear, the copyright claim in this case relates solely to the way that content was organized on THR's homepage for three weeks. To the extent that Penske is seeking revenues and expenses associated with the website as a whole, Penske is off the mark: the lawsuit is about the carousel code on the homepage and not the entire site. Pressing to learn the full amount of revenues that hollywoodreporter.com generated during that three-week period may be interesting to Penske as a competitor, but it has no relevance to copyright damages.[4] To the extent that Penske is seeking revenue or expense data for the homepage, again it misses the mark – the only relevant issue is the carousel code on the homepage, not the entire homepage, which has a wide range of content and features. There is also an issue of burden: If Penske had bothered to depose any THR witnesses on these financial issues, it would have learned that revenue and expense data for the homepage itself simply is not maintained in the ordinary course, and any effort to create such data for use in this litigation would be a strained, artificial and difficult exercise.[5]

The cases that Penske cites do not suggest otherwise – in those cases, there was a plausible chance that the infringement provided the defendant with indirect profits – for example, because the infringing product was used to help market other products. Penske

---

[4]   In its argument on this point, Penske refers to the purportedly "undisputed fact that Prometheus redeveloped its website in large part by using a word-for-word copy of Penske's key source code." This is not undisputed – it is false. Penske is again conflating the website redevelopment project of 2010 with the unrelated carousel project in August 2011. In addition, Penske refers to the "revenue … for the website redevelopment project." Penske has not requested information about the "revenue … for the website redevelopment project" – Penske has only requested information about revenues for the three-week period during which the carousel appeared on hollywoodreporter.com.

[5]   Such information is also extremely competitively sensitive and, if the Court were to order Prometheus to produce it, Prometheus would request that such order be conditioned upon entry of a protective order adequately protecting Prometheus from competitive harm.

has offered no such plausible argument here, given the brevity of the appearance of the carousel and the fact that all the carousel code did was cause content to rotate across the page.

X.   **ARGUMENT:  ISSUE #7 – Recruitment of Employees (RFP 1-8, 10; RFA 1-5; Interrogatory 1); and "Hot News" Misappropriation (RFP 27-55; RFA 8-41; Interrogatory 16)**

    A.    <u>Penske's Position:  The Court Should Compel Prometheus to Respond to Discovery Regarding Its Intent to Unlawfully Compete with Penske</u>

        1.    <u>Discovery Requests and Responses at-Issue</u>

        a.    <u>Prometheus Refuses to Provide Discovery Regarding Its Recruitment of Penske's Employees Who Were Under Long-Term Contract</u>

Penske propounded discovery regarding its allegation in the complaint that Prometheus' copying of Penske's website homepage is part of a concerted effort to unlawfully compete with Penske.  Penske is seeking discovery that will reveal Prometheus' overall plan for competing with Penske, including discovery regarding Prometheus' attempts to poach Penske's employees who Prometheus knew were under long-term contracts. (Complaint ¶¶ 27-33.)  The specific employees who Prometheus improperly attempted to recruit include Nikki Finke, Nellie Andreeva, Nic Paul, and Lynne Segall.  Pursuing this allegation, Penske propounded Requests for Production No. 1-8, and 10, Requests for Admission No. 1-5, and Special Interrogatory No. 1.

The following is the text of the document requests at issue:

Request for Production No. 1 states: "Produce all DOCUMENTS that RELATE TO any effort by PROMETHEUS to recruit Nikki Finke to accept a position working with PROMETHEUS, including without limitation all COMMUNICATIONS between Todd Boehly and Nikki Finke on that subject.

Request for Production No. 2 states: "If YOU contend that YOU did not believe that Nikki Finke had an employment contract to work for PMC for a fixed term at any

1   time that YOU attempted to recruit Nikki Finke to accept a position working with

2   PROMETHEUS, produce all DOCUMENTS that support that contention."

3       Request for Production No. 3 states: "Produce all DOCUMENTS that RELATE

4   TO any job offer from PROMETHEUS to Nikki Finke."

5       Request for Production No. 4 states: "Produce all DOCUMENTS that RELATE

6   TO any effort by PROMETHEUS to recruit Nellie Andreeva to accept a position working

7   with PROMETHEUS."

8       Request for Production No. 5 states: "If YOU contend that YOU did not believe

9   that Nellie Andreeva had an employment contract to work for PMC for a fixed term at

10  any time that YOU attempted to recruit Nellie Andreeva to accept a position working

11  with PROMETHEUS, produce all DOCUMENTS that support that contention."

12      Request for Production No. 6 states: "Produce all DOCUMENTS that RELATE

13  TO any effort by PROMETHEUS to recruit Nic Paul to accept a position working with

14  PROMETHEUS, including without limitation COMMUNICATIONS between Lori

15  Burgess and Nic Paul regarding that subject."

16      Request for Production No. 7 states: "If YOU contend that YOU did not believe

17  that Nic Paul had an employment contract to work for PMC for a fixed term at any time

18  that YOU attempted to recruit Nic Paul to accept a position working with

19  PROMETHEUS, produce all DOCUMENTS that support that contention."

20      Request for Production No. 8 states: "Produce all DOCUMENTS that RELATE

21  TO any effort by PROMETHEUS to recruit Lynne Segall to accept a position working

22  with PROMETHEUS."

23      Request for Production No. 10 states: "Produce all COMMUNICATIONS

24  between PROMETHEUS (including without limitation Richard Beckman and Jimmy

25  Finkelstein) and PMC (including without limitation Jay Penske) that RELATE TO any

26  offer, proposal, and/or suggestion that PMC would enter into an agreement with

27  PROMETHEUS to provide its news and/or feature content to PROMETHEUS."

28

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Prometheus summarily refused to respond to all document requests on this subject matter based on the following boilerplate response: "Subject to and without waiving the foregoing General Objections, Defendant objects to this Document Request as irrelevant to any claim or defense in this case. Defendant also objects to the request because it is vague, overbroad and unduly burdensome, and because it calls for documents that, if they were to be produced in spite of these objections, are of a type that would include Confidential Information that would only properly be produced under an appropriate confidentiality order."

The following is the text of Special Interrogatory No. 1, which is the only interrogatory at issue:

"IDENTIFY all COMMUNICATIONS in which YOU participated that RELATE TO any effort by PROMETHEUS to recruit Lynne Segall to accept a position working with PROMETHEUS"

Prometheus refused to respond to this interrogatory, stating: "Subject to and without waiving the foregoing General Objections, Defendant objects to this Interrogatory as irrelevant to any claim or defense in this case. Defendant objects to this Interrogatory on the grounds that the request for 'all communications' that 'relate to' the specified subject is vague, overbroad and unduly burdensome, and that the type of information sought is not appropriately obtained through interrogatories, and that, if it were to be produced in spite of these objections, such information Confidential Information that would only properly be produced under an appropriate confidentiality order."

The following is the text of the requests for admission at issue:

Request for Admission No. 1 states, "Admit that YOU recruited Nikki Finke to accept a position working with PROMETHEUS."

Request for Admission No. 2 states, "Admit that YOU recruited Nellie Andreeva to accept a position working with PROMETHEUS."

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1    Request for Admission No. 3 states, "Admit that YOU recruited Nic Paul to accept

2  a position working with PROMETHEUS."

3    Request for Admission No. 4 states, "Admit that YOU successfully recruited

4  Lynne Segall to accept a position working with PROMETHEUS."

5    Request for Admission No. 5 states, "Admit that Lynne Segall disclosed to YOU

6  that she had a fixed term employment contract with PMC prior to the time she accepted a

7  position working with PROMETHEUS."

8    Prometheus summarily refused to respond to each of the requests for admission

9  based on the following objections, "Without waiving any objections and without

10  admitting any facts whatsoever, Defendant objects on the basis that this Request is not

11  relevant to any claim or defense in this action.  Defendant also objects on the ground that

12  the Request seeks Confidential Information that Defendant could only provide under an

13  appropriate confidentiality order."

14    b.    <u>Prometheus Refuses to Provide Discovery Regarding Its Practice of</u>

15       <u>Monitoring Penske's Websites for the Purpose of Misappropriating</u>

16       <u>Hot News</u>

17    Prometheus' concerted effort to unlawfully compete with Penske also included a

18  policy of instructing its employees to monitor Penske's websites for "hot news" that it

19  could post on The Hollywood Reporter.  Penske's evidence supporting this allegation

20  consists of, among other things, dozens of time-stamped articles showing that The

21  Hollywood Reporter routinely published the same information as Deadline Hollywood

22  within minutes of the latter posting an article.

23    The allegations in the complaint regarding that Prometheus' concerted effort to

24  unlawfully compete with PMC's websites include that Prometheus published articles on

25  its Hollywood Reporter website that copied the substance of articles published on

26  Deadline.com.  (Complaint ¶¶ 34-38.)

27    Penske is seeking discovery that will further establish the existence of a policy at

28  Prometheus of copying the substance, if not the word-for-word text, of Penske's articles

37

1  on the Deadline website. Prometheus' policy of copying Penske's articles tends to show
2  that Prometheus encourages copying Penske's work product as a short cut for providing a
3  service similar to that which Penske provides. Therefore, the discovery Penske
4  propounded is relevant to the copyright infringement claim at issue here.

5     Pursuing this allegation, Penske propounded Requests for Production No. 27-55,
6  Requests for Admission No. 8-41, and Special Interrogatory No. 16. Prometheus failed
7  to respond or object to Request for Admission No. 41 (thereby waiving objection) and
8  summarily refused to respond to the remaining requests.

9     Special Interrogatory No. 16, which is the only interrogatory at issue, merely seeks
10 information supporting the allegations in Prometheus' answer to the complaint in this
11 case. Specifically, it states:

12    State all facts that support the statement in the ANSWER that the similarity
13 between the articles on DEADLINE and the HOLLYWOOD REPORTER WEBSITE
14 identified in paragraph 34 of the COMPLAINT can be explained, in part or in whole, by
15 the statement on page 6, lines 14-18 of the ANSWER that "THR and other entertainment
16 news sites sometimes report on the same stories within a few minutes of each other,
17 based on the same press releases or similar publicly available announcements from
18 studios and other entertainment industry sources."

19    Prometheus responded as follows: "Subject to and without waiving the foregoing
20 General Objections, Defendant objects to this Interrogatory as irrelevant to any claim or
21 defense in this case. Defendant further objects on the grounds that the request for 'all
22 facts' that support the statement is unduly burdensome and overly broad, and that the type
23 of information sought is not appropriately obtained through interrogatories, and that, if it
24 were to be produced in spite of these objections, such information Confidential
25 Information that would only properly be produced under an appropriate confidentiality
26 order."

27

28

After meeting and conferring, Prometheus stood by its position that it would not respond to any discovery regarding its policy of monitoring Penske's websites for the purpose of copying content because such information supposedly is irrelevant.

The following is the text of the document requests at issue:

Request for Production No. 27 states: "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Jennifer Lopez, Silvio Horta Sell Family Dramedy to Fox, By Lacey Rose dated 9/13/2011."

Request for Production No. 28 states: "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  NBC Entertainment's In-House Studio Gets New Name and Key Exec Promotions, By Marisa Guthrie dated 9/12/2011."

Request for Production No. 29 states: "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Ellen DeGeneres, Portia de Rossi Team for NBC Comedy, By Lesley Goldberg dated 9/9/2011."

Request for Production No. 30 states: "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Toronto 2011: Michael Fassbender's 'Shame' Sells to Fox Searchlight, By Borys Kit  dated 9/9/2011."

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Request for Production No.31 states, "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Samuel Goldwyn Grabs North American Rights to Diana Vreeland Doc, By Borys Kit dated 9/9/2011.

Request for Production No. 32 states, "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Russell Crowe in Negotiations to Star in 'Les Miserables', By Borys Kit dated 9/8/2011."

Request for Production No. 33 states, "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Lifetime Cancels 'The Protector,' By Lesley Goldberg dated 9/8/2011."

Request for Production No. 34 states, "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Lifetime, '24' Writer, 'Cold Case' Star Developing Casino Drama, By Lesley Goldberg dated 9/8/2011."

Request for Production No. 35 states, "Produce all DOCUMENTS that RELATE TO any publicly available source (including without limitation any press release, any public announcement, or any article published on DEADLINE) of information YOU used in connection with writing and/or publishing the following article posted on the

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1   HOLLYWOOD REPORTER WEBSITE: Fox, DreamWorks Team on Steven

2   Spielberg's 'Robopocalypse', By Pamela McClinktodk 9/7/2011."

3       Request for Production No. 36 states, "Produce all DOCUMENTS that RELATE

4   TO any publicly available source (including without limitation any press release, any

5   public announcement, or any article published on DEADLINE) of information YOU used

6   in connection with writing and/or publishing the following article posted on the

7   HOLLYWOOD REPORTER WEBSITE: TNT Orders Drama Pilot from 'CSI's' Carol

8   Mendelsohn, By Lacey Rose dated 9/7/2011."

9       Request for Production No. 37 states, "Produce all DOCUMENTS that RELATE

10  TO any publicly available source (including without limitation any press release, any

11  public announcement, or any article published on DEADLINE) of information YOU used

12  in connection with writing and/or publishing the following article posted on the

13  HOLLYWOOD REPORTER WEBSITE: Bruce Helford in Talks to Showrun Charlie

14  Sheen's 'Anger Management',  By Lacey Rose dated 9/6/11."

15      Request for Production No. 38 states, "Produce all DOCUMENTS that RELATE

16  TO any publicly available source (including without limitation any press release, any

17  public announcement, or any article published on DEADLINE) of information YOU used

18  in connection with writing and/or publishing the following article posted on the

19  HOLLYWOOD REPORTER WEBSITE: CW Buys Cop Drama From 'Homicide' Team

20  "Musketeers 3.0," By Philiana Ng, Lacey Rose dated 9/2/2011."

21      Request for Production No. 39 states, "Produce all DOCUMENTS that RELATE

22  TO any publicly available source (including without limitation any press release, any

23  public announcement, or any article published on DEADLINE) of information YOU used

24  in connection with writing and/or publishing the following article posted on the

25  HOLLYWOOD REPORTER WEBSITE: ABC Buys Comedy Project from

26  'Accidentally On Purpose' Creator Claudia Lonow, By Lacey Rose dated 9/1/2011."

27      Request for Production No. 40 states, "Produce all DOCUMENTS that RELATE

28  TO any publicly available source (including without limitation any press release, any

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1  public announcement, or any article published on DEADLINE) of information YOU used
2  in connection with writing and/or publishing the following article posted on the
3  HOLLYWOOD REPORTER WEBSITE:  Brad Weston Headed to New Regency, By
4  Pamela McClintock dated 9/1/2011."

5     Request for Production No. 41 states, "Produce all DOCUMENTS that RELATE
6  TO any publicly available source (including without limitation any press release, any
7  public announcement, or any article published on DEADLINE) of information YOU used
8  in connection with writing and/or publishing the following article posted on the
9  HOLLYWOOD REPORTER WEBSITE:  'Cougar Town' Creator Bill Lawrence Sells
10 Workplace Comedy to CBS, By: Lacey Rose dated 8/31/2011."

11    Request for Production No. 42: states, "Produce all DOCUMENTS that RELATE
12 TO any publicly available source (including without limitation any press release, any
13 public announcement, or any article published on DEADLINE) of information YOU used
14 in connection with writing and/or publishing the following article posted on the
15 HOLLYWOOD REPORTER WEBSITE:  NBC Signs on to Adapt 'Romancing the
16 Stone,' By Lesley Goldbert dated 8/31/2011."

17    Request for Production No. 43, "Produce all DOCUMENTS that RELATE TO any
18 publicly available source (including without limitation any press release, any public
19 announcement, or any article published on DEADLINE) of information YOU used in
20 connection with writing and/or publishing the following article posted on the
21 HOLLYWOOD REPORTER WEBSITE:  'Hatfields and McCoys' Adds Tom Berenger,
22 Powers Boothe, Mare Winningham, By Lesley Goldberg dated 8/30/2011."

23    Request for Production No. 44, "Produce all DOCUMENTS that RELATE TO any
24 publicly available source (including without limitation any press release, any public
25 announcement, or any article published on DEADLINE) of information YOU used in
26 connection with writing and/or publishing the following article posted on the
27 HOLLYWOOD REPORTER WEBSITE:  HBO Gives Pilot Order to Spike Lee, Mike
28 Tyson Boxing Drama, By Lacey Rose, Lesley Goldberg dated 8/30/2011."

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1    Request for Production No. 45 states, "Produce all DOCUMENTS that RELATE
2    TO any publicly available source (including without limitation any press release, any
3    public announcement, or any article published on DEADLINE) of information YOU used
4    in connection with writing and/or publishing the following article posted on the
5    HOLLYWOOD REPORTER WEBSITE: 'The Damned' in Development at Showtime,
6    By Lesley Goldberg dated 8/24/2011."

7    Request for Production No. 46 states, "Produce all DOCUMENTS that RELATE
8    TO any publicly available source (including without limitation any press release, any
9    public announcement, or any article published on DEADLINE) of information YOU used
10   in connection with writing and/or publishing the following article posted on the
11   HOLLYWOOD REPORTER WEBSITE: 'Up in the Air' Scribe Sells 'Jekyll & Hyde'
12   Drama Project to ABC, By Lesley Goldberg dated 8/22/2011."

13   Request for Production No. 47, states, "Produce all DOCUMENTS that RELATE
14   TO any publicly available source (including without limitation any press release, any
15   public announcement, or any article published on DEADLINE) of information YOU used
16   in connection with writing and/or publishing the following article posted on the
17   HOLLYWOOD REPORTER WEBSITE:  Phillip Noyce Inks First Look Deal at ABC,
18   By Lacey Rose dated 8/4/2011."

19   Request for Production No. 48 states, "Produce all DOCUMENTS that RELATE
20   TO any publicly available source (including without limitation any press release, any
21   public announcement, or any article published on DEADLINE) of information YOU used
22   in connection with writing and/or publishing the following article posted on the
23   HOLLYWOOD REPORTER WEBSITE:  Lionsgate UK Inks Content Supply Deal With
24   Netflix, By Etan Vlessing dated 8/4/2011."

25   Request for Production No. 49 states, "Produce all DOCUMENTS that RELATE
26   TO any publicly available source (including without limitation any press release, any
27   public announcement, or any article published on DEADLINE) of information YOU used
28   in connection with writing and/or publishing the following article posted on the

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1  HOLLYWOOD REPORTER WEBSITE: 'Mission: Impossible -- Ghost Protocol'

2  Bowing Abroad Prior to U.S. Release, By Pamela McClintock dated 7/27/2011."

3       Request for Production No. 50 states, "Produce all DOCUMENTS that RELATE

4  TO any publicly available source (including without limitation any press release, any

5  public announcement, or any article published on DEADLINE) of information YOU used

6  in connection with writing and/or publishing the following article posted on the

7  HOLLYWOOD REPORTER WEBSITE: 'The Walking Dead': Glen Mazzara in for

8  Frank Darabont as Showrunner, By Lesley Goldberg dated 7/27/2011."

9       Request for Production No. 51 states, "Produce all DOCUMENTS that RELATE

10  TO any publicly available source (including without limitation any press release, any

11  public announcement, or any article published on DEADLINE) of information YOU used

12  in connection with writing and/or publishing the following article posted on the

13  HOLLYWOOD REPORTER WEBSITE: 'Camelot': Starz Not Moving Forward With

14  Second Season, By Lacey Rose dated 6/30/2011."

15       Request for Production No. 52 states, "Produce all DOCUMENTS that RELATE

16  TO any publicly available source (including without limitation any press release, any

17  public announcement, or any article published on DEADLINE) of information YOU used

18  in connection with writing and/or publishing the following article posted on the

19  HOLLYWOOD REPORTER WEBSITE:  Jennifer Finnigan to Star in USA Pilot 'Wild

20  Card,' By Philiana Ng dated 6/29/2011."

21       Request for Production No. 53 states, "Produce all DOCUMENTS that RELATE

22  TO any publicly available source (including without limitation any press release, any

23  public announcement, or any article published on DEADLINE) of information YOU used

24  in connection with writing and/or publishing the following article posted on the

25  HOLLYWOOD REPORTER WEBSITE:  Mark Gill Named President of Millennium

26  Films, By Gregg Kilday dated 6/28/2011."

27       Request for Production No. 54 states, "Produce all DOCUMENTS that RELATE

28  TO any publicly available source (including without limitation any press release, any

44

1  public announcement, or any article published on DEADLINE) of information YOU used

2  in connection with writing and/or publishing the following article posted on the

3  HOLLYWOOD REPORTER WEBSITE: Mark Gill Named President of Millennium

4  Films, By Gregg Kilday dated 6/28/2011."

5       Request for Production No. 55 states, "Produce all DOCUMENTS that RELATE

6  TO any publicly available source (including without limitation any press release, any

7  public announcement, or any article published on DEADLINE) of information YOU used

8  in connection with writing and/or publishing the following article posted on the

9  HOLLYWOOD REPORTER WEBSITE: Comedy Central Adds Pair of Sketch Series,

10  By Lesley Goldberg dated 6/28/2011."

11       In response to each of the foregoing requests for production, Prometheus refused to

12  produce any documents. Specifically, Prometheus stated, "Subject to and without

13  waiving the foregoing General Objections, Defendant objects to this Document Request

14  as irrelevant to any claim or defense in this case. Defendant also objects to the request

15  because it is vague, overbroad and unduly burdensome, and because it calls for

16  documents that, if they were to be produced in spite of the foregoing objections, are of a

17  type that would include Confidential Information that would only properly be produced

18  under an appropriate confidentiality order."

19       The following is the text of the requests for admission at issue:

20       Request for Admission No. 6 states: "Admit that YOU requested one or more of

21  YOUR employees, officers, directors, or contractors to monitor the content on

22  DEADLINE during part or all of the time period from June through September 2011."

23       Request for Admission No. 7 states: "Admit that, on at least one occasion in the

24  last two years, YOU have requested one or more of YOUR employees, officers, directors,

25  or contractors to use content on DEADLINE in connection with the publication of

26  content on the HOLLYWOOD REPORTER WEBSITE."

27

28

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

Request for Admission No. 8 states: "Admit that YOU requested that the OFFENDING CONTRACTOR make part or all of the homepage of the HOLLYWOOD REPORTER WEBSITE look similar to the homepage of DEADLINE."

Request for Admission No. 9 states: "Admit that YOU did not inspect the computer code that the OFFENDING CONTRACTOR provided to YOU in connection with the revisions to the HOLLYWOOD REPORTER WEBSITE that YOU published in 2011."

Request for Admission No. 10 states: "Admit that the OFFENDING CONTRACTOR copied at least a portion of the FEATURED MODULE in connection with creating the THR MODULE."

Request for Admission No. 11 states: "Admit that YOU encouraged, instructed, and/or requested that the OFFENDING CONTRACTOR to copy at least a portion of the FEATURED MODULE in connection with creating the THR MODULE."

Request for Admission No. 12 states: "Admit that the OFFENDING CONTRACTOR performed work for YOU, other than the work that he performed in connection with the THR MODULE, in connection with which the OFFENDING CONTRACTOR copied computer code created by a third party."

Request for Admission No. 13 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: Jennifer Lopez, Silvio Horta Sell Family Dramedy to Fox, By Lacey Rose dated 9/13/2011."

Request for Admission No. 14 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: NBC Entertainment's In-House Studio Gets New Name and Key Exec Promotions, By Marisa Guthrie dated 9/12/2011."

Request for Admission No. 15 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD

REPORTER WEBSITE:  Ellen DeGeneres, Portia de Rossi Team for NBC Comedy, By Lesley Goldberg dated 9/9/2011."

Request for Admission No. 16 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Toronto 2011: Michael Fassbender's 'Shame' Sells to Fox Searchlight, By Borys Kit dated 9/9/2011."

Request for Admission No. 17 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Samuel Goldwyn Grabs North American Rights to Diana Vreeland Doc, By Borys Kit dated 9/9/2011."

Request for Admission No. 18 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Russell Crowe in Negotiations to Star in 'Les Miserables', By Borys Kit dated 9/8/2011."

Request for Admission No. 19 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Lifetime Cancels 'The Protector,' By Lesley Goldberg dated 9/8/2011."

Request for Admission No. 20 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Lifetime, '24' Writer, 'Cold Case' Star Developing Casino Drama, By Lesley Goldberg dated 9/8/2011."

Request for Admission No. 21 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE:  Fox, DreamWorks Team on Steven Spielberg's 'Robopocalypse', By Pamela McClinktodk dated 9/7/2011."

Request for Admission No. 22  states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD

47

1  REPORTER WEBSITE:  TNT Orders Drama Pilot from 'CSI's' Carol Mendelsohn, By
2  Lacey Rose dated 9/7/2011."

3      Request for Admission No. 23 states: "Admit that YOU used an article published
4  on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
5  REPORTER WEBSITE:  Bruce Helford in Talks to Showrun Charlie Sheen's 'Anger
6  Management', By Lacey Rose dated 9/6/11."

7      Request for Admission No. 24 states: "Admit that YOU used an article published
8  on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
9  REPORTER WEBSITE:  CW Buys Cop Drama From 'Homicide' Team "Musketeers
10 3.0," By Philiana Ng, Lacey Rose dated 9/2/2011."

11     Request for Admission No. 25 states: "Admit that YOU used an article published
12 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
13 REPORTER WEBSITE:  ABC Buys Comedy Project from 'Accidentally On Purpose'
14 Creator Claudia Lonow, By Lacey Rose dated 9/1/2011."

15     Request for Admission No. 26 states: "Admit that YOU used an article published
16 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
17 REPORTER WEBSITE:  Brad Weston Headed to New Regency, By Pamela McClintock
18 dated 9/1/2011."

19     Request for Admission No. 27 states: "Admit that YOU used an article published
20 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
21 REPORTER WEBSITE:  'Cougar Town' Creator Bill Lawrence Sells Workplace
22 Comedy to CBS, By: Lacey Rose dated 8/31/2011."

23     Request for Admission No. 28 states: "Admit that YOU used an article published
24 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
25 REPORTER WEBSITE:  NBC Signs on to Adapt 'Romancing the Stone,' By Lesley
26 Goldbert dated 8/31/2011."

27     Request for Admission No. 29 states: "Admit that YOU used an article published
28 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

REPORTER WEBSITE: 'Hatfields and McCoys' Adds Tom Berenger, Powers Boothe, Mare Winningham, By Lesley Goldberg dated 8/30/2011."

Request for Admission No. 30 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: HBO Gives Pilot Order to Spike Lee, Mike Tyson Boxing Drama, By Lacey Rose, Lesley Goldberg dated 8/30/2011."

Request for Admission No. 31 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: 'The Damned' in Development at Showtime, By Lesley Goldberg dated 8/24/2011."

Request for Admission No. 32 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: 'Up in the Air' Scribe Sells 'Jekyll & Hyde' Drama Project to ABC, By Lesley Goldberg dated 8/22/2011."

Request for Admission No. 33 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: Phillip Noyce Inks First Look Deal at ABC, By Lacey Rose dated 8/4/2011."

Request for Admission No. 34 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: Lionsgate UK Inks Content Supply Deal With Netflix, By Etan Vlessing dated 8/4/2011."

Request for Admission No. 35 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD REPORTER WEBSITE: 'Mission: Impossible -- Ghost Protocol' Bowing Abroad Prior to U.S. Release, By Pamela McClintock dated 7/27/2011."

Request for Admission No. 36 states: "Admit that YOU used an article published on DEADLINE to assist in creating the following article posted on the HOLLYWOOD

1  REPORTER WEBSITE: 'The Walking Dead': Glen Mazzara in for Frank Darabont as
2  Showrunner, By Lesley Goldberg dated 7/27/2011."

3      Request for Admission No. 37 states: "Admit that YOU used an article published
4  on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
5  REPORTER WEBSITE: 'Camelot': Starz Not Moving Forward With Second Season, By
6  Lacey Rose dated 6/30/2011."

7      Request for Admission No. 38 states: "Admit that YOU used an article published
8  on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
9  REPORTER WEBSITE: Jennifer Finnigan to Star in USA Pilot 'Wild Card,' By Philiana
10 Ng dated 6/29/2011."

11     Request for Admission No. 39 states: "Admit that YOU used an article published
12 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
13 REPORTER WEBSITE: Mark Gill Named President of Millennium Films, By Gregg
14 Kilday dated 6/28/2011."

15     Request for Admission No. 40 states: "Admit that YOU used an article published
16 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
17 REPORTER WEBSITE: Mark Gill Named President of Millennium Films, By Gregg
18 Kilday dated 6/28/2011."

19     Request for Admission No. 41 states: "Admit that YOU used an article published
20 on DEADLINE to assist in creating the following article posted on the HOLLYWOOD
21 REPORTER WEBSITE: Comedy Central Adds Pair of Sketch Series, By Lesley
22 Goldberg dated 6/28/2011."

23     In response to each of the foregoing requests for admission (except for No. 41, for
24 which Prometheus provided no objection or response), Prometheus refused to admit or
25 deny any facts. Instead, Prometheus merely objected as follows, "Without waiving any
26 objections and without admitting any facts whatsoever, Defendant objects to this Request
27 on the basis that it is not relevant to any claim or defense in this action. Defendant also

28

50

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1   objects on the ground that the Request seeks Confidential Information that Defendant
2   could only provide under an appropriate confidentiality order."

3               2.      Reasons to Compel a Further Response

4           Penske's complaint explains in detail the relationship between Prometheus' copying
5   of the source code on its TVLine website homepage, on one hand, and Prometheus'
6   attempts to copy Penske's other intellectual property and poach Penske's most creative
7   employees under long-term contracts, on the other hand.  Among other things,
8   Prometheus' unified course of action all reflects: (1) an acknowledgement that Penske has
9   better reporting and better website design than Prometheus has; and (2) a willingness to
10  go to any means necessary to undermine the competitive advantage that Penske earned by
11  recruiting top level talent to work there.  Prometheus has asserted the shallow theory that
12  this discovery is irrelevant because these ancillary instances of Prometheus copying and
13  free-riding off Penske's work are not the direct cause of the damage alleged in the
14  complaint.  However, the test of whether a defendant's act is relevant to a claim or
15  defense is not whether the act caused harm, but whether the act tends to prove or disprove
16  the claim.  Here, Prometheus fails to acknowledge that its other acts of copying are
17  relevant because they show a pattern of closely related conduct that all reveals a
18  coordinated intent to undermine Penske's advantage in developing a more creative and
19  talented workforce.  Thus, the Court should compel a further response to Special
20  Requests for Production No. 1-10, 27-55, Requests for Admission No. 1-41, and Special
    Interrogatory No. 1 and 16.
21
22      B.      Prometheus' Position: Penske Wrongfully Seeks Information about Issues
23              Completely Unrelated to the Copyright Claim[6]

24          The requests at issue here have nothing to do with Penske's sole cause of action,
25  i.e., for alleged copyright infringement of its carousel code.  Instead, Penske seeks
26  information about how its competitor, THR, prepares stories and recruits talent.  Penske

27  _____
    [6] For the sake of brevity, Prometheus will not repeat the text of the relevant discovery requests and
28  responses, which are included in Penske's argument on this Issue.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

1    even admits, *supra*, that what it is seeking is "discovery that will reveal Prometheus'
2    overall plan for competing with Penske." The complaint is padded with colorful
3    allegations about THR's alleged stealing of Penske's stories and poaching of its
4    employees. These allegations, like the filing of the suit itself, obviously were motivated
5    by a desire to injure a competitor through negative publicity. Not only are Penske's
6    allegations nonsense, but they obviously have no connection whatsoever to the copyright
7    claim. Requests for facts in support of these allegations thus fall far outside the scope of
8    proper discovery under Rule 26, which allows parties to "obtain discovery regarding any
9    nonprivileged matter that is *relevant to any party's claim* or defense...." Fed. R. Civ. P.
10   26(b)(1).

11        Simply because Penske dwells so much on these issues, Prometheus must start by
12   noting: The allegations about theft of stories and employees are nonsense. Prometheus
13   reports its own stories, and it competes lawfully and fairly for journalistic talent. In
14   particular, if Prometheus happens to report and publish its own version of a story that first
15   appeared on a Penske website, that is completely lawful and proper – and that is all
16   Penske actually alleges.

17        Penske's discovery requests in connection with the so-called "attempt[] to ...
18   poach Penske's most creative employees under long-term contracts" are not tied to the
19   copyright cause of action. Penske has pled no claim for "unlawful competition" or
20   tortious interference with contractual relations. Likewise, Penske's requests relating to
21   THR's supposed "Practice of Monitoring Penske's Websites for the Purpose of
22   Misappropriating Hot News" have nothing to do with the copyright cause of action pled.[7]

23        Discovery on topics completely unrelated to the carousel code is completely

24

25   _____
     [7] Notably, Penske at one point threatened to amend the complaint to include a claim for the tort of "hot
26   news misappropriation" – but it never made that amendment. This is not surprising - as Penske's own
     counsel has argued in another case, the "hot news" tort is not even recognized in California. *See* Reply
27   in Supp. of Mot. to Dismiss at 3, *X17, Inc. v. Lavandeira*, No. CV 06-7608-GAF (C.D. Cal. Feb. 5,
     2007). Accordingly, if Penske had attempted to add a "hot news" claim, that effort would have failed as
28   a matter of law and could not have supported the requested discovery.

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

unsupported. *See, e.g., Robinson v. Adams*, 2011 WL 2118753, at *3-4 (E.D. Cal. May 27, 2011) (when only claim in case was for failure to train and supervise, allegations that plaintiff was deprived of property were not relevant and not a proper subject for discovery); *Germane Music v. Universal Songs of Polygram*, 2006 WL 3780131 (D. Nev. 2006) (discovery relating to cause of action that had been dismissed from case was not permissible because not relevant to any live cause of action). Penske's suggestion that the alleged theft of stories and employees somehow forms a "pattern" with the code incident is, at best, imaginative. Discovery in a copyright case should be about the copyright claim. Penske should not be permitted to explore the editorial and personnel practices of a major competitor on such a flimsy basis.

## XI.   PENSKE'S CONCLUSION

For the foregoing reasons, Penske respectfully requests that the Court issue an order compelling Prometheus to provide further responses and production in response to the Special Interrogatory No. 1, 6, and 10-16, Requests for Production No. 1-10, 27-59, and Requests for Admission No. 1-41.

/
/
/
/
/
/
/

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER

## XII.   PROMETHEUS' CONCLUSION

For the foregoing reasons, Prometheus respectfully requests that the Court deny Penske's Motion to Compel as untimely or, in the alternative, deny the motion as unsupported.  To the extent that the Court reaches the substance of Penske's motion, Prometheus requests that the Court also consider, and grant, Prometheus's own motion to compel.

Dated: November 28, 2012                FREEDMAN & TAITELMAN, LLP

                              By:         /s/
                                   Bryan J. Freedman
                                   Steven B. Stiglitz
                                   *Attorneys for Plaintiff*
                                   *Penske Media Corporation*

                                   SAUER & WAGNER LLP

                              By:         /s/
                                   Eve H. Wagner

                                   *Attorneys for Defendant*
                                   Prometheus Global Media LLC

NOTICE OF MOTION AND JOINT STIPULATION RE: DISCOVERY MATTER