EVE H. WAGNER (State Bar No. 126471)
ANTHONY D. SBARDELLATI (State Bar No. 246431)
SAUER & WAGNER LLP
1801 Century Park East, Suite 1150
Los Angeles, California 90067
Tel: (310) 712-8100; Fax: (310) 712-8108
E-mail: ewagner@swattys.com; asbardellati@swattys.com

JEREMY FEIGELSON (*of counsel*)
BRUCE P. KELLER (*of counsel*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000; Fax: (212) 909-6836
Email:  jfeigelson@debevoise.com; bpkeller@debevoise.com
Attorneys for Defendant Prometheus Global Media, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSKE MEDIA CORPORATION, dba PMC, a Delaware corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>PROMETHEUS GLOBAL MEDIA, LLC, a Delaware limited liability company d/b/a hollywoodreporter.com; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.:  CV 11-7560-JST (MRW)<br>Hon. Josephine Staton Tucker<br>Magistrate:  Hon. Michael R. Wilner<br><br>**DISCOVERY MATTER:**<br>**DEFENDANT PROMETHEUS GLOBAL MEDIA, LLC'S NOTICE OF MOTION AND JOINT STIPULATION RE:  FURTHER RESPONSES TO WRITTEN DISCOVERY PROPOUNDED TO PLAINTIFF PENSKE MEDIA CORPORATION**<br><br>**DECLARATIONS OF ANTHONY SBARDELLATI AND STEVEN B. STIGLITZ; AND [PROPOSED] ORDER (filed concurrently)**<br><br>Action filed:          September 14, 2011<br>Discovery Cut-off:  November 9, 2012<br>Pre-Trial Conf.:     June 28, 2013<br>Trial Date:            July 9, 2013<br>Hearing Date:       January 9, 2013 |

1

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on January 9, 2013 at 9:30 a.m. or as soon thereafter as this matter may be heard by the above-titled Court, located at 312 North Spring Street Los Angeles, CA 90012, Courtroom H (9th Floor),  pursuant to Federal Rules of Civil Procedure 26, 33, 34 and 37, and Local Rules 37-1, 37-2, Defendant Prometheus Global Media LLC ("Prometheus") will and hereby does move, as set forth in the attached Joint Stipulation to this Court, for an order compelling Plaintiff Penske Media Corporation ("Penske") to provide further responses to Prometheus's First Set of Interrogatories (Interrogatories 1 and 2), and to produce documents responsive to Prometheus's First Set of Requests for Production (RFPs 1-3) and Prometheus's Second Set of Requests for Production (RFP 4).

Prometheus submits this Joint Stipulation on the ground that Penske lacks substantial justification to object to the discovery at issue, which relates to core issues in this case, including:

(1) Identification of the work that Penske claims was infringed, and the validity of the registration of that work with the U.S. Copyright Office; and

(2) Penske's alleged damages, including its purported eligibility for statutory damages.

This Notice of Motion and Motion is based on the attached Joint Stipulation, all points and authorities cited therein, the accompanying declaration of Anthony Sbardellati and the attached exhibits thereto, any relevant matters of which the Court may take judicial notice, and any argument of counsel that shall be permitted at the hearing of this Motion.

2

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

1         Counsel for the parties met and conferred regarding Penske's discovery responses
2   to Interrogatories 1 and 2 and RFPs 1-3 on July 11, 2012 in compliance with Local Rule
3   37-1.  *See* Sbardellati Decl. ¶ 8 & Ex. G (Meet and Confer Letter); *id* ¶ 9 (Telephonic
4   Meet and Confer Session).

5
6   DATED:  November 28, 2012      SAUER & WAGNER LLP

7
8         By:      _____/s/_____
         Eve H. Wagner
9
         *Attorneys for Defendant*
10        Prometheus Global Media LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
         3
26  DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

27

28

## I.    **DEFENDANT PROMETHEUS'S INTRODUCTORY STATEMENT**

Defendant Prometheus Global Media LLC ("Prometheus") submits this Motion to Compel in conjunction with the Motion to Compel filed by Plaintiff Penske Media Corporation ("Penske").

Penske's complaint makes a single legal claim, for copyright infringement arising out of Prometheus's brief use of a small amount of computer code that a contractor copied from a website owned by Penske called TVLine.com. The code related to a generic website function called a "carousel," which causes images on a website page to rotate through a central frame. Carousels appear on hundreds of well-known websites, and are typically created using open-source code that is free and available to anyone, as was the case with Penske's TVLine carousel. In order to defend against Penske's claim, Prometheus requested narrow, targeted discovery aimed at learning exactly what material Penske contends was protected by copyright. Penske responded by refusing to produce any information whatsoever.

Along with its Complaint, Penske filed a "Report on the Filing or Determination of an Action or Appeal Regarding a Copyright" (ECF No. 3), indicating that Penske had registered eight different versions of its carousel code with the U.S. Copyright Office. Although these registrations were all made on September 13, 2011 – the day before Penske filed suit – Penske stated on the registrations that the 8 separate versions of code were used on the TVLine website beginning on eight different dates from January 2011 through July 2011. Each registration "disclaimed" a portion of the code as publicly-available material over which Penske claims no copyright interest.

Through two Interrogatories and three Requests for Production ("RFPs"), Prometheus sought to obtain:

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

- complete copies of the eight separate versions of the carousel code for which Penske made copyright registrations

- explanations of how these eight versions differed from one another, and from the open-source, publicly-available material that Penske disclaimed; and

- documents relating to Penske's creation of each version of the code.

Such information is directly relevant to defending Penske's claim that each "version" of the code was copyrightable; if it was not, then Penske has no claim for infringement. It is also relevant to determining whether the particular portion of code that the contractor copied was even copyrightable in the first place; again, if it was not, then Penske has no claim. With respect to Penske's damages claim, the discovery is necessary to assess whether the eighth and final version of the code was sufficiently different from the predecessor versions to be copyrightable. If it was not, then Penske has no claim for statutory damages.

This motion arises in an unusual procedural context, which warrants explanation. There has been little discovery activity in this case while the parties have focused on mediation. The mediation thus far has not resulted in settlement. With a November 9 discovery cutoff date approaching, the parties recently requested an extension of discovery deadlines. The Court twice rejected that request. *See* Sbardellati Decl. ¶ 11. Per the Court's orders, discovery motions were due to be filed not later than November 19. *See Id.* ¶ 13 & Ex. J at § 4. Accordingly, in Prometheus's view, discovery is over, discovery motions are untimely, and the parties must simply go forward. Specifically, Prometheus believes that Penske's Motion to Compel is untimely (as well as meritless).

Nonetheless, Penske is attempting to get its motion heard, and we recognize that it is possible that the Court will decide to consider it. In that event, Prometheus believes,

5

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

1  fairness demands that not just Penske but both sides should be heard as to discovery

2  requests that were outstanding at the November 9 cutoff, whether or not the motion to

3  compel process had been initiated prior to that date.  Prior to the cutoff, Penske had

4  stonewalled Prometheus on a number of core discovery items.  Those items are the

5  subject of this motion by Prometheus.  If the Court concludes that discovery motions are

6  untimely (as, again, Prometheus believes to be the case), then Prometheus will be

7  prepared to move forward accordingly.  If the Court concludes that discovery motions

8  can still be heard, then the Court should deny Penske's motion and compel Penske to cure

9  its own discovery defaults.

## II.   PLAINTIFF PENSKE MEDIA CORP'S INTRODUCTORY STATEMENT

11      This case arises from The Hollywood Reporter's blatant word-for-word copying of

12  the source code used to create the website homepage for TVLine.com, another top media

13  source that focuses on the entertainment industry.  The parent company of TVLine.com,

14  Plaintiff Penske Media Corporation ("Penske"), caught The Hollywood Reporter red-

15  handed and promptly filed this lawsuit for copyright infringement against the parent

16  company of The Hollywood Reporter, Defendant Prometheus Global Media, LLC

17  ("Prometheus").

18      Prometheus' motion to compel seeks to fabricate a discovery dispute where one

19  does not exist.  To the extent that Prometheus has requested any non-privileged

20  documents that are not already in Prometheus' possession, Penske proposed to produce

21  responsive documents, subject to entry of a protective order to protect confidential and/or

22  trade secret information and subject to mutual production by Prometheus of documents

23  that each side agrees is relevant.  Further, days before Prometheus served its motion to

24  compel, Penske agreed to Prometheus' prior proposal that each side submit its proposed

6

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

protective order to the Magistrate so that the process could be completed without motion practice.  Therefore, Prometheus' motion incorrectly suggests that Penske prevented the entry of a protective order by never responding to Prometheus' proposal regarding the submission of competing protective orders.  That is, Prometheus' motion easily could have been avoided.

Leaving aside that Penske already agreed to produce responsive, non-privileged documents, subject to a protective order, the requests for production are moot because Prometheus seeks copies of documents that are already in its possession.  Specifically, Requests for Production Nos. 1-3 seek the various versions of source code that Penske filed with the U.S. Copyright Office and documents related to the registration. Prometheus even concedes in the motion that it recently obtained the source code that it is seeking via a request to the U.S. Copyright Office, yet Prometheus nevertheless seeks judicial intervention to force Penske to produce the same documents.[1]  Prometheus' only remaining issue is that the publicly available documents *appear* to be excerpts of the material that Prometheus copied such that production of the remaining portions from Penske might be required.  However, Prometheus knew Penske's position since July and did not pursue the discovery from that time until it suddenly served its portion of this joint stipulation.  Prometheus never attempted to resolve the discrepancy with Penske at any time during the intervening four months.  Had Prometheus met and conferred regarding its concern after obtaining the documents from the U.S. Copyright Office,

---

[1]  Prometheus' motion does not specifically address the request for "related" documents. Penske objected to that request on the grounds that such documents are protected by the attorney-client privilege in that counsel assisted in and directed the preparation of the registrations in connection with this lawsuit.  Prometheus never addressed Penske's objection.  (Declaration of Steven B. Stiglitz ¶ 2.)

7

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

Penske would have (and still will, upon request) examine the material Prometheus obtained and provide any portions of the copyrighted material that Prometheus did not already obtain.

The same problem infects Prometheus' motion for a further response to Request for Production No. 4, which seeks documents relating to Penske's damages. To the extent Penske has documents relating to its lost profit damages (i.e. a reasonable royalty for the copied source code), Penske is willing to produce such documents subject to a protective order. Penske has no documents relating to Prometheus' profits from using the copied source code, as Penske believes that Prometheus' own internal documents are the only ones relating to the revenue Prometheus generated as a result of the infringement.

The two interrogatories at issue seek two separate types of information, neither of which is appropriate. First, the interrogatories seek a line-by-line comparison of the text of various versions of the source code. That is improper because it will be the subject of expert analysis. Further, given the upcoming expert disclosure deadline, this issue will be moot prior to the hearing on this motion. Second, the interrogatories seek a statement by Penske regarding its intent in making the changes reflected in each new version. That is improper because copyrightability does not depend on the author's intended functionality, but rather an intrinsic and extrinsic comparison of the text of the source code.

For the foregoing reasons, the Court should deny Prometheus' motion in its entirety.

8

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

**III.   ARGUMENT:  ISSUE #1:  Identification of Material that Penske Claims Was Validly Copyrighted (Interrogatories 1, 2; RFPs 1-3)[2]**

Interrogatory No. 1:

State with specificity how the January 5, 2011 version of the "Source Code for TV Line Website," which you registered with the U.S. Copyright Office on September 13, 2011 (Registration No. 1-659849701 / TX 7-414-768), differs from the jQuery, jQuery UI, and jquery.pngFix.pack.js code that you disclaimed as pre-existing material when you registered the work (*i.e.*, state the number of lines of code that you did not disclaim, the content, functionality and purpose of the code that you did not disclaim, and exactly how the code that you did not disclaim affects the operation and appearance of the TVLine.com website).

Response to Interrogatory No. 1:

The Responding Party incorporates the general objections by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

(1) The Interrogatory seeks information that is neither relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

(2) The Interrogatory is overly broad and unduly burdensome in that it seeks a summary of differences that can be determined by reference to the material deposited with the U.S. Copyright Office (which is equally available to Defendant) and the disclaimed material (which consists of publicly available tools that assist in website development).

(3) The Interrogatory is compound.

(4) The Interrogatory seeks confidential business information protected as trade secret.  Responding Party has met and conferred with Defendant regarding a potential protective order re: confidentiality, but Defendant has not yet agreed to terms that properly define the scope of confidential information and attorneys' eyes

---

[2] The headings relating to each issue were added by Prometheus.  Penske disagrees with certain characterizations therein.

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

only information.

(5) The Interrogatory is duplicative with Request for Production No. 1 and, to the extent that response is proper (despite Responding Party's contention that no response is required), Responding Party would produce the requested documents rather than prepare a summary of the documents requested.

Interrogatory No. 2:

With respect to the other seven versions of the "Source Code for TV Line Website" that you registered with the U.S. Copyright Office on September 13, 2011 (*i.e.*, the other seven registrations to which PMC referred in its Report on the Filing or Determination of an Action or Appeal Regarding a Copyright (ECF No. 3)), state with specificity how each version differs from the previously published version (*i.e.*, with respect to each of the seven versions of the code published after the January 5, 2011 version, state, among any other differences, the number of lines of code that were added to and/or removed from the prior version, the content, functionality and purpose of any changes, and exactly how the changes to the prior version affected the operation and appearance of the TVLine.com website).

Response to Interrogatory No. 2:

The Responding Party incorporates the general objections by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

(1) The Interrogatory seeks information that is neither relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

(2) The Interrogatory is overly broad and unduly burdensome in that it seeks a summary of differences that can be determined by reference to the material deposited with the U.S. Copyright Office (which is equally available to Defendant) and the disclaimed material (which consists of publicly available tools that assist in website development).

(3) The Interrogatory is compound.

(4) The Interrogatory seeks confidential business information protected as trade secret. Responding Party has met and conferred with Defendant regarding a potential protective order re: confidentiality, but Defendant has not yet agreed to

10

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

terms that properly define the scope of confidential information and attorneys' eyes only information.

(5) The Interrogatory is duplicative with Request for Production No. 1 and, to the extent that response is proper (despite Responding Party's contention that no response is required), Responding Party would produce the requested documents rather than prepare a summary of the documents requested.

RFP No. 1:

A copy of each deposit that you submitted to the U.S. Copyright Office in connection with each of the eight versions of the "Source Code for TV Line Website" that you registered with the Copyright Office (i.e., the eight registrations to which PMC referred in its Report on the Filing or Determination of an Action or Appeal Regarding a Copyright (ECF No. 3)).

Response to RFP No. 1:

The Responding Party incorporates the general objections by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

(1) The Request seeks documents that are neither relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that Defendant admits that its website contained an exact copy of Responding Party's source code.

(2) The Request seeks documents that are equally available to responding party through the U.S. Copyright Office.

RFP No. 2:

To the extent that the deposits you submitted to the U.S. Copyright Office in connection with each of the eight versions of the "Source Code for TV Line Website" did not consist of the entire source code for each of the versions of the Source Code that you were registering (e.g., if you submitted only an excerpt of any of the versions of source code that you were registering), a copy of the entire version of the source code for each version of the "Source Code for TV Line

11

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

Website" that you registered (i.e., the complete source code for each of the eight versions of the code to which PMC referred in its Report on the Filing or Determination of an Action or Appeal Regarding a Copyright (ECF No. 3)).

Response to RFP No. 2:

The Responding Party incorporates the general objections by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

(1) The Request seeks documents that are neither relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that Defendant admits that its website contained an exact copy of Responding Party's source code.

(2) The Request seeks documents that contain confidential business information protected as trade secret. Responding Party has met and conferred with Defendant regarding a potential protective order re: confidentiality, but Defendant has not yet agreed to terms that properly define the scope of confidential information and attorneys' eyes only information.

RFP No. 3:

All documents concerning the creation and/or registration of each of the eight versions of the "Source Code for TV Line Website" that you registered with the U.S. Copyright Office (*i.e.*, the eight versions of the "Source Code for TV Line Website" to which PMC referred in its Report on the Filing or Determination of an Action or Appeal Regarding a Copyright (ECF No. 3)).

Response to RFP No. 3:

The Responding Party incorporates the general objections by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

12

[Response to Request No. 4][3] (1) The Responding Party incorporates the general objections by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

(1) The Request seeks documents that are neither relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that Defendant admits that its website contained an exact copy of Responding Party's source code.

(2) The Request is overly broad and unduly burdensome in that it seeks all documents concerning a substantial project to develop the key module for the homepage of the TVLine website.

(3) The definition of the term "concerning," which is incorporated into the Request, is vague and ambiguous, making the entire request unintelligible.

(4) The Request seeks documents that contain confidential business information protected as trade secret. Responding Party has met and conferred with Defendant regarding a potential protective order re: confidentiality, but Defendant has not yet to terms that properly define the scope of confidential information and attorneys' eyes only information.

(5) The Request seeks documents that are protected by the attorney-client privilege and/or the work product doctrine.


A.    Prometheus's Points and Authorities on Issue 1:

Penske can only have a valid claim for copyright infringement if the material copied was subject to copyright protection in the first place – which requires, among other things, that only an "original" work is protectible.  NIMMER ON COPYRIGHT § 2.01. Prometheus therefore is entitled to explore exactly what material was subject to copyright protection.  This is both so that Prometheus both defend against Penske's claim that such material was original, and so that Prometheus can understand exactly what material Penske claims was infringed.  Interrogatory 1 asks which portion of Penske's code

---

[3] The bracketed text is a typo included in Penske's original response to RFP No. 3.

13

Penske was referring to when it disclaimed certain components of the code as non-copyrightable.  It also asks Penske to describe the function of the balance of the code.  This is basic information in a copyright case about code, and central to the assessment of copyrightability.

When a party registers a copyright, it generally is required to submit a "deposit" of that work to the U.S. Copyright Office, to serve as an identifier of the work being registered.  RFP No. 1 requests copies of the deposits submitted by Penske, so that Prometheus can confirm the identity of, and analyze, the eight works over which Penske claims copyright ownership.  In addition, because the U.S. Copyright Office Rules sometimes permit a registrant of voluminous computer code to submit only an excerpt of such code, rather than the entire piece of code being registered, RFP No. 2 requested copies of the full works being registered for copyright protection, in case the deposits represented only excerpts.  *See* U.S. Copyright Office Circular 61.

Having sued for infringement of its code, Penske cannot seriously argue that it is entitled to withhold the code from Prometheus in discovery.  Far from being "irrelevant" as Penske argues, the material sought could not be more central.  Penske itself stated in its Initial Disclosures that it contemplated supporting its claims using "[t]he software code that [Penske] used to create the Module and any related work product."  Penske's objection that such materials need not be provided because Prometheus's website contained an "exact copy of [TVLine's] source code" is both incorrect and beside the point.  The code that appeared on Prometheus's site was not an exact copy (that is, at the very least, an issue of fact), and the fact that certain material was copied does not establish (a) whether Penske's code as a whole was copyrightable in the first place, or (b) whether the portion of that code actually copied by Prometheus's contractor was original

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

material rather than publicly-available material over which Penske could claim no copyright interest. Simply put, Prometheus is entitled to know exactly what material Penske is claiming copyright over, and claiming infringement of.

Prometheus is also entitled to know how each iteration of the Penske code differed from the version preceding it. This is because a successor version can only be copyrightable if it is substantially different from its predecessor, and a separate copyright registration of a new version of a work applies only to the material that was added to the prior version. NIMMER § 3.03[A] ("in order to qualify for a separate copyright as a derivative … work, the additional matter injected in a prior work … must constitute more than a minimal contribution."); U.S. Copyright Office Circular 61 ("Registration of any subsequent version [of a computer program] covers only the new or revised material added to that version."). Interrogatory 2 asks how each of the seven versions of code that followed the first registered version differed from the version that preceded it, and RFPs No. 1-3 seek copies of the different versions and documents related to their creation. This is plainly relevant information – if Penske is claiming that each version is copyrightable, it should produce documents that will allow Prometheus to assess the work that was done to change each "version" to arrive at an allegedly independently copyrightable new work. Penske's relevance objection, again, is frivolous. In particular, with respect to statutory damages, this information is relevant because only the final version of Penske's code was arguably timely registered for purposes of eligibility for statutory damages, so if that version is not independently copyrightable, Penske cannot seek statutory damages. *See* 17 U.S.C. § 412(2) ("[N]o award of statutory damages … shall be made for … any infringement of copyright commenced after first publication of

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.").[4]

Penske's objections other than relevance are equally meritless. First, Penske refuses to answer Interrogatory No. 1, concerning which portions of the first version of the carousel code Penske is disclaiming as not original, on the basis that Prometheus should obtain the deposit of the first version of code from the Copyright Office and do its own analysis to form a guess about which portions Penske is disclaiming. This is not a proper objection – when Penske disclaimed portions of the code, it presumably had an understanding of which portions it was disclaiming. Prometheus is entitled to know this information in order to defend against Penske's claim of infringement, and there is no basis for the objection. Similarly, in response to Interrogatory No. 2, Penske could easily tell Prometheus how the various versions of the code differed from the preceding version by identifying the lines of code that were added and the functions that those lines of code performed. Again, there is no basis for claiming that Prometheus is required to obtain the deposits themselves and formulate a guess as to what Penske changed and what the functions of the changes were (in addition, the deposits themselves may be incomplete excerpts of the code). The Interrogatory is proper, and the objection is not.

---

[4]     To protect against Penske's failure to disclose, Prometheus has, in fact, requested, paid for, and obtained copies of Penske's deposits from the Copyright Office. Those deposits do, in fact, appear to be excerpts, rather than complete sets of code. Nonetheless, in addition to complete sets of each version of code, Prometheus still requests that Penske be compelled to provide copies of the deposit material that it submitted to the Copyright Office. The effort required by Penske to provide such copies is de minimus, and having the copies will allow Prometheus to confirm that what it obtained from the Copyright Office is the same as what Penske submitted to the Copyright Office.

16
DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

It is difficult to see how Penske can, with a straight face, bring a lawsuit alleging copyright infringement and then refuse to disclose or identify the works that it claims were subject to copyright protection.  This discovery should be compelled.

B.   Penske's Points and Authorities on Issue 1:

1.   Penske Stands Ready, Willing and Able to Produce the Documents Demanded

Since July 2012, when the parties began meeting and conferring regarding the discovery at issue, Penske has always stated that it would intended to produce responsive, non-privileged documents, subject to the entry of a protective order.  (Declaration of Steven B. Stiglitz ("Stiglitz Decl.") ¶ 2.) Several days prior to service of this motion to compel, Penske reiterated that offer and proposed that the parties should engage in mutual production of documents, subject to a protective order for those documents that contain confidential and/or trade secret information.  (Stiglitz Decl. ¶ 3, Ex. A (Email from Steven B. Stiglitz to Anthony Sbardellati).  Further, in light of the fact that Prometheus (and not Penske) is the party seeking a more strict protective order with unnecessary attorneys' eyes only provisions, Penske is willing to produce the requested documents subject to the terms of either side's proposed protective order.

2.   The Documents Sought Are in Prometheus' Possession, Making this Discovery Dispute Unnecessary

Prometheus actually admits in the motion to compel that it already has a copy of Penske's submissions, which it obtained through the procedure outlined above.  The only outstanding issue is whether the submissions to the U.S. Copyright Office contain the entire text of the source code that Penske sought to copyright.  This issue would have been easy to resolve if Prometheus had informed Penske prior to serving its portion of

17

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

this joint stipulation that the U.S. Copyright Office's file appeared to contain mere excerpts.  Again, given that Penske has always maintained that it would, subject to protective order, produce responsive documents that are not publicly available, Prometheus' failure to address the issue is the primary factor that prevented an informal resolution of this issue.  Any problem is one of Prometheus' own making, yet Prometheus refuses to resolve the issue without motion practice.

3.     The Interrogatories Seek Two Separate Analyses of Source Code, One of Which Is the Subject of Expert Testimony and the Other of Which Is Irrelevant

a.     Prometheus' Request for a Line-by-Line Comparison Calls for Expert Testimony

To determine whether source code is copyrightable, the Court engages in "analytic dissection" to compare the source code to prior works.  See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1476 (9th Cir. 1992) (affirming summary judgment of copyright claim based on expert testimony which included analytic dissection).  Expert testimony is appropriate for the purpose of conducting analytic dissection of source code because the analysis is objective.  Id.[5]  Expert testimony is well-suited to cases arising from the copying of source code because the analytic dissection is the complete analysis.

---

[5]  In addition, the intrinsic test relates to the overall look and feel of the two works.  The motion does not argue that the discovery at issue is appropriate to evaluate differences in the "look and feel" between Penske's source code and the open source code that Penske used as a foundation.  To the contrary, the entire purpose of the discovery is to engage in analytic dissection of the code on a line-by-line basis.

18

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

Here, Penske intends to present expert testimony comparing Penske's source code, Prometheus' copied version of the source code, and the open source code upon which Penske's code is based.  That analysis would make the motion moot.

        b.       <u>Prometheus' Request Regarding Penske's Intent Is Irrelevant</u>

The non-literal elements of source code such as the author's purpose or the author's intended functionality cannot support a claim for copyright.  <u>See</u> <u>Oracle Am., Inc. v. Google Inc.</u>, 2012 U.S. Dist. LEXIS 75896 (N.D. Cal. May 31, 2012) (issuing judgment in favor of Google on grounds Oracle could not properly copyright the functionality of its Java APIs to prevent Google from engaging in non-literal copying to replicate certain functionality and reasoning that "[f]unctional elements essential for interoperability are not copyrightable" under section 102(b) of the Copyright Act).

Here, Prometheus improperly seeks discovery regarding irrelevant matter such as the "purpose" or the "functionality" of Penske's additions to the open source code that Penske used as a foundation.  However, as stated by the court in <u>Oracle</u>, section 102(b) of the Copyright Act does not permit a person to copyright functionality.  In that case, the issue was whether Google had infringed Oracle's copyrights to certain Java APIs by having its computer programmers re-engineer new and different source code that accomplished the same functionality.  There, despite some similarities in the resulting source code, the court found that Google had not infringed Oracle's copyright because Google merely replicated Oracle's functionality.

Prometheus argues that it merely is seeking information regarding the scope of the source code submitted to the U.S. Copyright Office that Penske actually disclaimed, as though that were a relevant, non-expert issue, but Prometheus' argument is a red herring.  Penske did not actually disclaim particular lines of source code.  Rather, Penske created

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

source code for the carousel module on its website that includes software utilities previously created by others.  The U.S. Copyright Office does not require a copyright claimant to analyze the submitted work line-by-line and then disclaim each line that consisted of prior works.  Rather, the U.S. Copyright Office merely requires a copyright claimant to identify any prior work that forms a part of the submission.  Given the fact that expert testimony is required for an "analytic dissection" of the two works to determine the scope of the copyright claimant's original contribution, it would be impractical for a copyright claimant to determine the precise lines in its submission to the U.S. Copyright Office that are original.  Therefore, Penske did not actually disclaim particular lines of source code in its submissions to the U.S. Copyright Office, and the Court should not require Penske to do that now, except in connection with the forthcoming expert reports.

## IV.   ARGUMENT:  ISSUE #2:  Penske's Damages (RFP 4)

RFP No. 4:

> Any documents relevant to PMC's claim that it suffered damages as a result of the alleged infringement of computer code.

Response to RFP No. 4:

> The Responding Party incorporates the preliminary statement by reference as though stated in their entirety herein. The Responding Party further objects on the grounds that:

> (1) The Request seeks documents that contain confidential business information protected as trade secret. Responding Party has met and conferred with Defendant regarding a potential protective order re: confidentiality, but Defendant has not yet

20

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

agreed to terms that properly define the scope of confidential information and attorneys' eyes only information.

(2) The Request seeks documents that are protected by the attorney-client privilege and/or the work product doctrine.

(3) The Request is vague, ambiguous and unintelligible in that, among other things, it relies on a legal conclusion regarding the nature of documents that are relevant to a legal position.

A.   Prometheus's Points and Authorities on Issue 2:

There can be no dispute that documents supporting Penske's alleged damages from copyright infringement are relevant.  *See, e.g., Karnazes v. Cnty. of San Mateo*, 2010 WL 1910522, at \*3-5 (N.D. Cal. May 11, 2010) (compelling plaintiff to produce "documents in support of her damage claims as well as materials which evidence the nature and exent of injuries suffered").  Penske's objections do not justify its complete refusal to produce documents in response to this request.  Indeed, Penske was required to produce documents supporting its claim of damages even without any request by Prometheus.  *See* F.R.C.P. 26(a)(1)(A)(iii).  Penske failed to do so.

B.   Penske's Points and Authorities on Issue 2:

1.   Again, Penske Stands Ready, Willing and Able to Produce the Documents Demanded

Penske incorporates from its opposition to the discovery described in Prometheus' "Issue #1" the argument that Penske already offered to produce any responsive documents in its possession, subject to a protective order, but Prometheus rejected that offer in favor of unnecessary motion practice.  Thus, to the extent Penske has non-privileged documents that reflect its lost profits (i.e. a reasonable royalty for the source

21

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

code), Penske is willing to produce such documents, pursuant to either party's proposed protective order.

2.    <u>Prometheus Already Has the Remaining Documents It is Requesting</u>

Title 17 of the United States Code, section 504(b) states, in relevant part, that "[t]he copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement."  Further, in establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.  <u>See Polar Bear Prods. v. Timex Corp.</u>, 2004 U.S. App. LEXIS 22131 (9th Cir. 2004).

Here, to the extent Penske's damages are based on the revenue that Prometheus earned as a result of the unlawful copying, the relevant evidence for that analysis is Prometheus' financial information relating to its use of the copied source code on the homepage of The Hollywood Reporter's website.  There is no need for Prometheus to seek discovery of that information because those documents are uniquely within its own possession, and Penske has no responsive documents.  Thus, the Court should deny the motion to compel such documents.

**V.    PROMETHEUS'S CONCLUSION**

For the foregoing reasons, if the Court entertains Penske's untimely Motion to Compel, the Court should grant Prometheus's Motion to Compel.

DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

1

## VI.   **PENSKE'S CONCLUSION**

2

For the foregoing reasons, the Court should deny Prometheus's Motion to Compel.

3

4

Dated:  November 28, 2012

5

6

SAUER & WAGNER LLP

7

By:   _____/s/_____
              Eve H. Wagner

8              *Attorneys for Defendant*

9              Prometheus Global Media LLC

10

FREEDMAN & TAITELMAN, LLP

11

By:   _____/s/_____
              Bryan J. Freedman

12              Steven B. Stiglitz
              *Attorneys for Plaintiff Penske Media Corp.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26 DEFENDANT'S NOTICE OF MOTION AND JOINT STIPULATION RE DISCOVERY MATTER

27

28